**PHILADELPHIA NEWSPAPERS, INC., Appellant,**

v.

**NUCLEAR REGULATORY COMMISSION.**

**No. 83–1698.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 2, 1983.

Decided Feb. 10, 1984.

As Amended Feb. 10, 1984.

Ann C. Yahner, Washington, D.C., with whom Herbert E. Milstein, Washington, D.C., was on the brief, for appellant.

Newman T. Halvorson, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Royce C. Lamberth, R. Craig Lawrence, and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., and Herzel H.E. Plaine, Gen. Counsel, E. Leo Slaggie, Acting Sol., and Irwin B. Rothschild, III, Atty., N.R.C., Washington, D.C., were on the brief, for appellee.

Before WRIGHT and TAMM, Circuit Judges, and SWYGERT,* Senior Circuit Judge.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

Few events in recent years have so stirred the public to alarm as the nuclear accident on March 28, 1979 at Three Mile Island Unit 2 (TMI–2). Widespread anxiety persists to this day, particularly among those who live in the shadows of the twin reactors at the site. These residents of Pennsylvania, and the newspapers that serve them, have followed with a keen eye the Nuclear Regulatory Commission's investigation into safety at Three Mile Island. Recently public attention has focused on the Commission's deliberations over whether Unit 1 (TMI–1), which was ordered shut down in the aftermath of the accident at TMI–2, should be permitted to restart.

In this case we evaluate the propriety of the Commission's decision to exclude the public from a meeting involving discussion of whether to restart TMI–1. The Commission had scheduled a meeting for May 10, 1983, to discuss "Steps to Decision in TMI–1 Restart." See Sunshine Federal Register Notice, NRC, Week of May 9, 1983, 48 Fed. Reg. 20845 (1983), Joint Appendix (JA) 7. Normally such a meeting would be open to the public under the Government in the

---

* Of the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (Supp. V 1981).

Sunshine Act, 5 U.S.C. § 552b (1982).[1] The Commission sought to close the meeting pursuant to an exemption that permits exclusion of the public from portions of meetings that "specifically concern * * * the initiation, conduct, or disposition of a particular case of formal agency adjudication pursuant to the procedures in section 554 of this title [the Administrative Procedure Act] or otherwise involving a determination on the record after opportunity for a hearing." 5 U.S.C. § 552b(c)(10). Appellant, publisher of the Philadelphia Inquirer, challenged NRC's attempt to close the meeting. The District Court initially granted a temporary restraining order against closing the meeting. The Commission then cancelled the meeting and it has never been held. On the merits of the case the District Court, in *Philadelphia Newspapers v. NRC,* D.D.C. Civil Action No. 83–1330 (June 3, 1983), JA 220, held that the Commission could properly close the meeting.

We reverse and remand to the District Court with instructions to remand to the Commission for further proceedings. The Commission's decision to close the "Steps to Decision in TMI–1 Restart" meeting can be squared with neither the specific commands of the Sunshine Act nor the principle of broad public accountability that undergirds the Act. Most topics that the Commission plans to discuss at this meeting do not "specifically concern a particular case of formal agency adjudication," and thus fall outside the intended scope of the exemption the Commission invoked. All portions of any meeting involving discussions of such nonexempt topics must be open to the public. On remand the Commission must carefully evaluate the agenda for the proposed meeting and may close only those portions of the meeting that will *specifically concern* formal adjudication connected with TMI–1 restart.

I. BACKGROUND

When disaster struck at the TMI–2 reactor in March 1979, TMI–1, its twin in design and construction, was at the time shut down for routine maintenance. TMI–1 has remained in cold shutdown while the Commission has evaluated whether restarting the reactor will jeopardize public safety. The Commission's evaluation of what actions to take with respect to TMI–1 comprises several lines of inquiry that the Commission has been careful to conduct separately. In the immediate wake of the TMI–2 incident the Commission initiated an on-the-record hearing procedure to recommend specific steps for improving safety at TMI–1 based on information learned as a result of the accident at TMI–2 (the On-the-Record Proceeding). Somewhat later the Commission established three informal decisional processes. In the first the Commission will determine whether the operators of Three Mile Island have resolved safety problems at TMI–1 unconnected with the design and construction defects discovered as a result of the accident at TMI–2. In the second the Commission will decide whether TMI–1 should be restarted on an interim basis pending final disposition of all issues. In the third the Commission will make a final decision as to whether TMI has met the safety recommendations of the On-the-Record Proceeding.

A. *The On-the-Record Proceeding*

As a first response to the disaster NRC conducted an investigation of both reactors, and decided that many of the deficiencies

---

1. The relevant sections of the Sunshine Act are:

(b) * * * Except as provided in subsection (c), every portion of every meeting of an agency shall be open to public observation.

(c) Except in a case where the agency finds that the public interest requires otherwise, the second sentence of subsection (b) shall not apply to any portion of an agency meeting * * * where the agency properly determines that such portion or portions of its meeting * * * is likely to—

*  *  *  *  *  *

(10) specifically concern the * * * initiation, conduct, or disposition by the agency of a particular case of formal agency adjudication pursuant to the procedures in section 554 of this title [the APA] or otherwise involving a determination on the record after opportunity for a hearing.

5 U.S.C. § 552b (1982).

that caused the accident at TMI–2 also marred TMI–1. The Commission therefore prohibited restart of TMI–1 until short-term steps to cure these deficiencies had been completed and long-term steps to ensure safety had been substantially begun. *See In re Metropolitan Edison Co.* (Order and Notice of Hearing of August 9, 1979), 10 N.R.C. 141 (1979), JA 189.

This August 9th order established a hearing procedure for determining needed short-term steps and long-term goals, and for monitoring TMI's efforts to meet these requirements. The order created an Atomic Safety and Licensing Board (Licensing Board) to conduct the hearings in accordance with NRC's on-the-record procedures set out in subpart G of 10 C.F.R. Part 2 (1983). The Licensing Board was to make short-term and long-term safety recommendations, and could recommend restart if it found that the needed short-term steps had been completed and sufficient progress had been made toward long-term goals. Appeal from the Licensing Board's decision on these matters was originally to go directly to the Commission, but in 1981 the Commission amended this process to provide for a level of intermediate review by an Appeals Board. These hearings, and concomitant review, will be referred to as the On-the-Record Proceeding.

### B. *The Informal Decisional Processes*

1. *The non-nexus issues.* During the course of the proceedings before the Board several additional issues arose regarding the safety of TMI–1. These issues included concerns about repair of corroded steam generator tubes and about the seismic qualifications of the emergency feedwater cooling system in TMI–1. Though the Appeals Board sought to have these additional issues incorporated into the On-the-Record Proceedings before the Safety and Licensing Board, the Commission refused. The Commission believed that because these safety concerns were unrelated to those arising out of the TMI–2 accident they were beyond the scope of that proceeding. *In re Metropolitan Edison Co.* (Order of July 16,

1982), 16 N.R.C. 1 (1982), JA 32. Thus these issues, which the Commission has labeled "non-nexus" issues, are being handled outside the On-the-Record Proceeding, even though the issues have a substantial bearing on the decision whether to restart TMI–1. Having defined these issues as being outside of the On-the-Record Proceeding, the Commission freed itself from the strictures applicable to such proceedings. For purposes of this case (as will become apparent, *see* Part II–A *infra*), it is important to note that the Commission permits *ex parte* contacts between NRC staff and commissioners about the non-nexus issues. *See In re Metropolitan Edison Co.,* Nuclear Reg. Reports (CCH) ¶ 30768 at 30723 (March 4, 1983), JA 46.

2. *The interim restart decision.* In the 1979 order the Commission also reserved the right to permit an interim restart of TMI–1 pending formal appeal of the Licensing Board's decision in the On-the-Record Proceeding. The 1979 Order explicitly stated that "the Commission's decision on that question [of interim restart] shall not affect appellate review of the merits of the Board's decision." *Order,* 10 N.R.C. at 149, JA 197.

3. *The final restart decision.* While the On-the-Record Proceeding was being conducted, issues arose as to what ultimate force the Licensing Board findings would have. The Commission made clear that the Licensing Board had been delegated the authority—subject to review by the Appeals Board and the Commission—to determine what short-term and long-term safety steps needed to be taken at TMI–1. The Licensing Board also had authority to recommend to the Commission that sufficient progress had been made toward these goals to permit TMI–1 to be restarted. This recommendation, however, did not have the force of the Licensing Board's determinations as to what safety needs were. The Commission stated that it would conduct an independent inquiry into whether the safety goals had in fact been met: "Whether Licensee [TMI] has satisfactorily completed short-term and long-term items will be determined by the NRC staff and the Com-

mission *outside of this adjudicatory proceeding."* In re Metropolitan Edison Co. (Order of October 22, 1982), 16 N.R.C. 1243, 1244 (1982), JA 38 (emphasis added).

To summarize: The Commission's decision whether to permit restart of TMI–1 encompasses at least four independent elements. First, the Commission will sit as final appeal authority on the issue whether the Licensing Board's specific safety recommendations in the On-the-Record Proceeding are necessary and appropriate. Second, the Commission will independently decide whether "non-nexus" safety issues have been resolved. Third, the Commission will independently decide whether interim restart is appropriate pending final resolution of the other issues. Fourth, the Commission will independently decide whether TMI–1 has complied with the Licensing Board's safety recommendations. The Commission has been careful throughout to insulate the latter three functions from the On-the-Record Proceeding.

### C. *The May 10th Meeting*

Based on the record made at the On-the-Record Proceeding hearings the Licensing Board has concluded that if certain conditions specified in its decisions are satisfied TMI–1 should be permitted to restart. These findings are subject to review on appeal first to the Appeals Board and then to the Commission. Though the appeals had not yet been resolved, the Commission scheduled a meeting for May 10, 1983 to discuss "Steps to Decision in TMI–1 Restart." The Commission never announced to the public the particular agenda for this meeting. The most thorough statement of the purported agenda is contained in an affidavit of Commission Chairman Nunzio Palladino. *See* JA 179. According to Chairman Palladino, the meeting was to have involved discussion of two topics: (1) the scheduling of steps to be taken in making the restart decision; and (2) the decision whether to grant interim restart authority to TMI–1 pending formal appeal of the Licensing Board's decisions. These issues would involve discussion of the On-the-

Record Proceeding, but they would also involve discussion of whether TMI had met the Licensing Board's requirements, whether non-nexus issues had been satisfactorily resolved, and whether conditions were appropriate for an interim restart pending appeal of the Board's decisions.

The Sunshine Act applies to NRC and would normally require that "every portion" of NRC's scheduled meeting "be open to public observation." 5 U.S.C. § 552b(b). The Commission sought, however, to close the meeting on the ground that it would specifically concern a formal agency adjudication; Exemption 10 to the Sunshine Act's basic open meeting requirement permits exclusion of the public from the portions of an agency meeting that "specifically concern a particular case of formal agency adjudication." 5 U.S.C. § 552b(c)(10). The Commission announced its decision to close the May 10th meeting in a notice posted on May 4th. *See* Sunshine Federal Register Notice, NRC, Week of May 9, 1983, JA 7. On May 9th Philadelphia Newspapers sought a temporary restraining order to preclude the Commission from closing the May 10th meeting. The District Court granted the TRO. The Commission then cancelled the meeting, and it has not yet been held. On May 19th the Commission moved for summary judgment on the issue of its right to close the meeting pursuant to Exemption 10. The District Court granted the motion, and Philadelphia Newspapers then appealed to this court.

### II. ANALYSIS

Enacting the Sunshine Act, Congress sought to ensure the continuing fidelity of the federal government to one of the core principles of our representative democracy: "government should conduct the public's business in public." S.Rep. No. 94–354, 94th Cong., 1st Sess. 1 (1975). This court's recent decisions in *Pan American World Airways, Inc. v. CAB,* 684 F.2d 31 (D.C.Cir. 1982), and *Common Cause v. NRC,* 674 F.2d 921 (D.C.Cir.1982), leave no doubt that we expect all multi-member agencies to take seriously the Act's clear command that "ev-

ery portion of every meeting * * * be open to public observation." 5 U.S.C. § 552b(b). As we said in *Common Cause:* "Every meeting of a multi-member agency must be open to the public, except that *specific portions* of a meeting may be closed if the discussion is reasonably likely to fall within one or more of ten narrowly defined exceptions." 674 F.2d at 928 (emphasis added). Full accountability to the people demands no less.

Exemption 10, which the Commission invokes here, permits an agency to close *"portions"* of a meeting that *"specifically concern* * * * the initiation, conduct, or disposition * * * of *a particular case* of formal agency adjudication." 5 U.S.C. § 552b(c)(10) (emphasis added). Case law interpreting the exemption is sparse. In deciding whether the Commission's meeting about TMI–1 restart should fall within Exemption 10, we should be guided by the congressional instruction—implicit in the stringent phrasing of Exemption 10 and explicit in the Act's legislative history—that "[e]xceptions to the Sunshine Act's general requirement of openness must be construed narrowly." *Common Cause v. NRC, supra,* 674 F.2d at 932, *citing* H.R.Rep. No. 94–880 (Part I), 94th Cong., 2d Sess. 2 (1976). Also, Congress has required that the agency invoking an exemption carry the burden of persuasion as to the applicability of that exemption. H.R.Rep. No. 94–880, *supra,* at 3–4; *see Pan American World Airways, Inc. v. CAB, supra,* 684 F.2d at 35. To resolve this case we will first evaluate the Commission's attempt to close the entire May 10th meeting. Finding that the entire meeting cannot be closed to the public, we will then determine whether any of the topics on the May 10th agenda might properly be closed.

### A. The Attempt to Close the Entire May 10th Meeting

Exemption 10 explicitly limits closure to the "portion or portions" of a meeting that

"specifically concern" formal adjudication. 5 U.S.C. § 552b(c). In this case the trial court held that "the meeting may properly be closed during those discussions that are likely to concern the conduct of the formal adjudication," *Philadelphia Newspapers v. NRC, supra,* at 5, JA 224, but did not specify which topics would properly fall under this rubric. The Commission interprets the District Court decision as permitting closure of the entire meeting.

We have seen that the Commission has pursued several distinct lines of inquiry in its investigation of TMI–1. All of these will be discussed at the meeting concerning restart. *See* Part I–C *supra.* The only portion of the discussion that might implicate a formal agency adjudication—and thus fall within Exemption 10—would be discussion of the On-the-Record Proceeding.[2] That, however, will take up only some fraction of the Commission's time at this meeting. In any discussion of TMI–1 restart the Commission will of necessity spend much of its time on the questions whether non-nexus issues have been resolved, whether TMI–1 has satisfactorily met the Licensing Board's short-term and long-term safety steps, and whether interim restart is appropriate prior to resolution of these other issues. Throughout the decisional process the Commission has stressed that these three issues are wholly separate from the On-the-Record Proceeding. *See* Part I–B *supra.* Yet the Commission seeks to use the On-the-Record Proceeding as an umbrella to shield the entire meeting from the light of public scrutiny; because the Commission will discuss the On-the-Record Proceeding it claims that the entire meeting will specifically concern a particular case of formal agency adjudication.

The Sunshine Act requires an "examination of each item of business to ascertain whether it may be closed * * *." *Common Cause v. NRC, supra,* 674 F.2d at 932; *accord Pan American World Airways, Inc. v. CAB, supra,* 684 F.2d at 35; *Pacific Legal*

**2.** For purposes of analysis in this Part of the opinion we will assume that the On-the-Record Proceeding is a formal agency adjudication within the meaning of Exemption 10. In Part II–B *infra* we will determine whether that is in fact the case.

*Foundation v. Council on Environmental Quality,* 636 F.2d 1259, 1265 (D.C.Cir.1980). The Commission knows full well that

[e]ven if a portion of a * * * meeting may lawfully be closed because that part of the discussion is protected by a specific exemption, the Commission may not close the entire meeting * * *. Congress declared that meetings should be open to the fullest extent possible. * * * We therefore reject the Commission's contention that the Sunshine Act does not require an agency to segregate exempt discussions into a closed portion of its meeting. * * *

*Common Cause v. NRC, supra,* 674 F.2d at 936 n. 46. In the present case the Commission has again made no effort to segregate the arguably exempt discussion of the On-the-Record Proceeding from discussions of other issues. And the Commission makes no claim that discussions of these other issues fall within Exemption 10 of their own force. Instead, the Commission argues that we should nonetheless permit closure of the entire meeting because in the course of discussion of topics other than the On-the-Record Proceeding members of the Commission will be likely to make known their views on some of the issues in the On-the-Record Proceeding.

■ We reject the Commission's claim that an entire meeting can be brought within the coverage of Exemption 10 because discussion of one arguably exempt topic may diffuse throughout a meeting devoted primarily to discussion of nonexempt topics. The language of the Act, illuminated by pertinent legislative history, reveals clear congressional intent that agencies make every reasonable effort to segregate the exempt from the nonexempt. *See* S.Rep. 94–1178, 94th Cong., 2d Sess. 17 (1976) (Conference Report). If, after making such efforts, an agency can persuade the court that segregation of exempt and nonexempt topics "would make a coherent discussion impossible," *Common Cause v. NRC, supra,* 674 F.2d at 936 n. 46, then it might be appropriate for an agency to close an entire meeting, depending on the particular circumstances of the case. Uncritical applica-

tion of the principle would, however, defeat the congressional purpose of ensuring that as much of every agency meeting as is practicable be open to the public. Thus when only a small fraction of topics that an agency will discuss at a meeting is arguably exempt, the agency cannot rely on this fact to close an entire meeting, even if discussion of the exempt topic might come up at various points throughout the meeting.

In the present case the Commission has made no effort to segregate the exempt from the nonexempt and has made no showing that coherent discussion would be impossible if discussion of the On-the-Record Proceeding were segregated from the rest of the meeting. Even if the Commission had made such a showing we would still hold that the Sunshine Act requires that discussion of all topics at the TMI–1 restart meeting other than the On-the-Record Proceeding be open to the public. To permit the Commission to close discussion of clearly nonexempt topics—the nonnexus issues, interim restart, and final compliance with the Licensing Board safety recommendations—merely because some small portion of the meeting will involve discussion of the On-the-Record Proceeding would turn the Sunshine Act on its head.

Furthermore, the legislative history makes clear that the exemption should apply only to discussions of adjudication when the adjudication has taken place on the record and subject to the prohibition of *ex parte* communications in the Administrative Procedure Act. These strictures on formal adjudication work together with the Sunshine Act to achieve full accountability to the public. For formal adjudications the on-the-record requirement and *ex parte* contacts prohibition ensure that the agency decision is made solely on the basis of information in the record and thus "open to inspection by any member of the public." S.Rep. No. 94–354, *supra,* at 26. For actions other than formal adjudication the Sunshine Act similarly ensures that the public will have the opportunity to scrutinize the decisional process.

The bulk of the information that will be discussed at the TMI–1 restart meeting involves agency action that is not on the record. In fact, the Commission has explicitly exempted the non-nexus safety issues and the final determination of compliance with the Licensing Board's recommendations from the On-the-Record Proceeding. The Commission has also permitted *ex parte* contacts between NRC staff and commissioners on these issues. Thus if we sanction the Commission's attempt to close the May 10th meeting, the public will never know the basis for the decision to restart TMI–1.

■ For these reasons, we hold that the Commission may not use the fact that part of the meeting will involve discussion of the On-the-Record Proceeding as an umbrella to shield from public scrutiny all other topics at the TMI–1 restart meeting. Specifically, we hold that the Sunshine Act requires that all discussion of non-nexus issues, interim restart, and final compliance with Licensing Board safety recommendations be open to public observation.

B. *Possible Closure of Discussions of the On-the-Record Proceeding*

The only topic of the TMI–1 restart meeting to which Exemption 10 arguably applies is the On-the-Record Proceeding. That proceeding is a formal adjudication in the sense that the Commission is conducting a full-scale on-the-record hearing. Whether Exemption 10 covers discussion of the On-the-Record Proceeding is, however, a question not easily answered. Exemption 10 defines "formal agency adjudication" as adjudication "pursuant to the procedures in

section 554 of [the APA] or otherwise involving a determination on the record after an opportunity for a hearing." 5 U.S.C. § 552b(c)(10).

Superficially the latter clause of this definition would seem to encompass the On-the-Record Proceeding. The legislative history makes clear, however, that the "otherwise involving a determination on the record" clause in Exemption 10 was meant primarily to encompass *formal rulemaking* and not adjudication. H.R.Rep. No. 94–880 (Part II), 94th Cong., 2d Sess. 9 (1976); *accord Time, Inc. v. U.S. Postal Service*, 667 F.2d 329, 334 (2d Cir.1981).[3] Thus we must focus our inquiry on the first clause of the statute's definition. We must decide whether the On-the-Record Proceeding is a formal adjudication "pursuant to the procedures in section 554 of [the APA]." Section 554 details formal procedures for "every case of adjudication *required by statute* to be determined on the record after opportunity for an agency hearing[.]" 5 U.S.C. § 554(a) (emphasis added). In other words, Section 554 applies only to the extent that another statute requires formal adjudication. The statute that the Commission claims *requires* an on-the-record proceeding in this case is Section 189(a) of the Atomic Energy Act. 42 U.S.C. § 2239(a) (1976).[4]

Section 189(a) provides for hearings in a number of circumstances but does not on its face require *on-the-record* hearings. Whether, and to what extent, Section 189(a) should be read as requiring on-the-record hearings—and thus invoking the procedures of Section 554 of the APA—is not free of doubt.[5] Section 189(a) does not in its terms

---

**3.** We need not decide the difficult issue whether this second clause covers proceedings other than formal rulemaking because we find the disputed On-the-Record Proceeding to be within the first clause. *See infra.*

**4.** Section 189(a) provides, in relevant part:

In any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license or construction permit or application to transfer control, and in any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees, and in any proceeding

for the payment of compensation, an award or royalties under sections 2183, 2187, 2236(c) or 2238 of this title, the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding, and shall admit any such person as a party to such proceeding. * * *

42 U.S.C. § 2239(a) (1976).

**5.** A statute may implicate § 554 even if that statute does not explicitly require hearings to be on the record when it can be said with some assurance that the statutory scheme envisions a formal hearing. *Seacoast Anti-Pollution*

distinguish between the types of hearings appropriate in different circumstances. The Commission has, however, made some distinctions. For example, the Commission has invariably "provided formal hearings in licensing cases, as contrasted with informal hearings in rule-making proceedings * * *." *Siegel v. AEC,* 400 F.2d 778, 785 (D.C.Cir. 1968). Even if we were to follow the Commission's apparent interpretation of Section 189(a) as requiring formal hearings in licensing proceedings, we could not resolve this case on that basis because the Commission has specifically stated that the On-the-Record Proceeding "is not a licensing proceeding" but is a "discretionary special proceeding." *In re Metropolitan Edison Co.,* Nuclear Reg. Reports (CCH) ¶ 30747 at 30641, 30645–30646 (December 10, 1982), JA 76, 87–89.

Were we to read Exemption 10 so strictly as to apply it only when a statute *mandates* on-the-record proceedings, we would have to go on to resolve the interpretative question whether Section 189(a) mandates on-the-record proceedings in this special discretionary proceeding. We need not go so far, however. It is enough that the Commission is *in fact* conducting the On-the-Record Proceeding in accordance with formal procedures set forth in Section 554 of the APA. All decisions in the proceeding must be made on the basis of record evidence, and *ex parte* contacts are prohibited. Thus the requirements of the Sunshine Act need not apply to what has in substance been a Section 554 adjudication and thus functionally within Exemption 10. As long as the Commission continues to bind itself to the requirements of Section 554 it remains fully accountable to the public in its decisional process. On remand the Commission may

decide to close to the public those portions of the TMI–1 restart meeting that specifically concern the On-the-Record Proceeding if it is able to find that closure is proper.[6]

CONCLUSION

A decade ago revelations of secret abuse of official power shocked this nation and seared in our minds a lesson vital to the health of a democratic polity: government should conduct the public's business in public. In the Sunshine Act Congress moved to ensure that those in government do not forget that they are above all accountable to the people of this nation. Nowhere is the need for accountability more acute than in the Commission's handling of the Three Mile Island controversy. Without a doubt, Congress intended that the Sunshine Act would guarantee public accountability on what is one of the most sensitive and difficult issues of our time: the safety of nuclear power. In the present case the Commission has failed to persuade us that Exemption 10 to the Act's basic requirement of openness permits closure of the entire TMI–1 restart meeting.

Let us be clear in conclusion so that the Commission will not misinterpret our decision. We hold that the On-the-Record Proceeding is a formal agency adjudication within the meaning of Exemption 10 of the Sunshine Act and that the Commission may therefore close from the public those segregated portions of the TMI–1 restart meeting that specifically concern this proceeding, unless the public interest requires otherwise. The On-the-Record Proceeding is, however, the *only* topic that the Commis-

*League v. Costle,* 572 F.2d 872, 876 (1st Cir.) ("the resolution of this issue turns on the substantive nature of the hearing Congress intended to provide"), *cert. denied,* 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978).

**6.** Of course on remand the Commission must follow the Sunshine Act's command that even portions of the meeting that will involve the On-the-Record Proceeding must be open to the public if the "agency finds that the public interest" so requires. 5 U.S.C. § 552b(c). The

House Report accompanying the Act makes clear that "even if a meeting * * * falls within one of [the exemptions], it shall not be closed * * * if the public interest requires otherwise," and that "[t]his balancing is to be performed by the agency in the first instance." H.R.Rep. 94–880, 94th Cong., 2d Sess. 9 (1976). The clear import of the phrase "in the first instance" in the House Report is that the agency's "public interest" determination is subject to judicial review.

**1204**

sion may close to the public. The Commission may not use the On-the-Record Proceeding as an umbrella to shield all other topics at the TMI–1 restart meeting from the public scrutiny that the Sunshine Act mandates. Specifically we hold that all discussions of non-nexus issues, interim restart, and final compliance with the Licensing Board's safety recommendations must be open to public observation. We thus reverse the District Court and remand with instructions that the case be remanded to the Commission for further proceedings consistent with this opinion. We anticipate that the Commission's scrupulous adherence to the Sunshine Act's clear commands will defuse much of the public anxiety surrounding this difficult issue.

*Reversed and remanded.*