**SHURBERG BROADCASTING OF HARTFORD, INC., Plaintiff,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Defendant.**

Civ. A. No. 84–3406.

United States District Court, District of Columbia.

Sept. 13, 1985.

Harry F. Cole, Mark A. Kirsch, Bechtel & Cole, Washington, D.C., for plaintiff.

Patricia J. Kenney, Asst. U.S. Atty., Washington, D.C., and Sue Ann Preskill, Office of General Counsel, F.C.C., Washington, D.C., for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

The plaintiff, Shurberg Broadcasting of Hartford, Inc. ("Shurberg"), filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Government in the Sunshine Act ("Sunshine Act"), 5 U.S.C. § 552b, seeking access to certain documents generated by the defendant, the Federal Communications Commission ("FCC"/the "Commission") as well as the videotape of a closed Commission meeting conducted on September 26, 1984. This case is presently before the Court on defendant's motion to dismiss, or in the alternative for summary judgment, with respect to the FOIA claim. The plaintiff opposes the motion, asserting its need to conduct discovery prior to any disposition of its FOIA claim. Also before the Court are the parties' cross-motions for summary judgment with respect to the Sunshine Act claim. Upon consideration of the motions, and the respective memoranda filed in support of and in opposition thereto, as well as the relevant portions of the record, this Court concludes that summary judgment must be granted for the defendant with respect to the Sunshine Act claim, but denied with respect to the FOIA claim, and the plaintiff permitted to conduct limited discovery on the FOIA claim.

### Statement of Facts

The plaintiff's claims in this action arise from matters that were pending before the FCC in September 1984 relating to the license of Station WHCT–TV, Channel 18, Hartford, Connecticut. At that time, Station WHCT–TV was licensed to Faith Center, Inc. ("Faith Center"). Faith Center's operations, however, had been under investigation by the FCC since 1977, and in a November 1980 order the FCC designated Faith Center's pending license renewal application for a hearing to determine whether it was qualified to remain a Commission license. See 47 U.S.C. § 309(e). However,

the FCC's "Statement of Policy on Minority Ownership of Broadcasting Facilities," 68 F.C.C.2d 979 (1978), as revised, 92 F.C.C.2d 849 (1982), allows a licensee whose application has been designated for a hearing to avoid that hearing by selling the station to a minority-owned entity at a price below fair market value. Pursuant to this "distress sale" policy, Faith Center filed an application in 1981 to sell to a minority-owned entity. That application was granted, subject to the conditions that the prospective purchaser be found fully qualified to be a licensee and that the sale become final within 90 days after such qualifications were confirmed. However, the sale was never consummated. In September, 1982 Faith Center filed a second request to utilize the distress sale process, which was granted by the FCC on September 30, 1983, subject to the same conditions as the earlier approval. Again, however, the sale was not consummated.

Finally, on June 28, 1984 Faith Center filed a third distress sale request. However, on December 2, 1983, Shurberg Broadcasting, the plaintiff here, had filed an application for authority to construct and operate a television station on Channel 18 in Hartford which was mutually exclusive with Faith Center's renewal application. Furthermore, on April 19, 1984 Shurberg had filed a "Petition for Extraordinary Relief" with the FCC, asserting that, in light of the failure of Faith center's second distress sale attempt, its application should be consolidated with Faith Center's renewal application, and the hearing promptly conducted. Upon the failure of the FCC to act, and upon learning that Faith Center was about to submit the third distress sale application, Shurberg filed a Petition for Writ of Mandamus with the United States Court of Appeals for the District of Columbia Circuit, requesting that the Court of Appeals order the FCC to act on the pending renewal application and Shurberg's competing application. *In re Shurberg Broadcasting of Hartford, Inc.*, No. 84–5363 (D.C.Cir.1984). On June 29, 1984 the Court of Appeals ordered that Shurberg's petition would be held in abeyance until the earlier of October 1, 1984 or the disposition of certain cases then pending before the Court of Appeals. *Id.*

On September 19, 1984, pursuant to the public notice requirements of the Sunshine Act, 5 U.S.C. § 552b(d), (e), the Commission released a public notice stating that it intended to meet, in closed session, on September 26, 1984 in order to consider matters raised by Shurberg's Petition for Extraordinary Relief and Faith Center's third distress sale request. A subsequent request by Shurberg to open the meeting with respect to its petition was denied. In doing so, the FCC cited exemption 10 of the Sunshine Act, which permits closure of a meeting concerning "the agency's participation in a civil action or proceeding," or the "conduct or disposition by the agency of a particular case of formal agency adjudication." 5 U.S.C. § 552b(c)(10). In doing so, the FCC indicated that the meeting would relate to matters brought against the FCC by Shurberg in the Court of Appeals, and would concern the conduct and disposition of formal agency action concerning the licensing of Hartford Channel 18. After the September 26, 1984 meeting, the Chairman of the Commission, Mark S. Fowler, certified that the date, time, place and persons present for consideration of the matters were as stated on the certificate to close the meeting.

On December 7, 1984, the Commission released a memorandum opinion and order denying Shurberg's Petition for Extraordinary Relief and granting Faith Center's third petition to accomplish a distress sale. In doing so, the FCC determined that Shurberg was not at that time entitled, as a matter of right, to have its application considered along with Faith Center's renewal application, a position the FCC recognized as requiring the conclusion that Faith Center was absolutely precluded from pursuing its third distress sale request. Moreover, the FCC determined, as a policy matter, that the goal of possible minority ownership of the station at that time outweighed the public interest in having competing applications considered at that time.

The FCC ruled, however, that if Faith Center's third distress sale was not consummated, its renewal application would be promptly considered, allowing competing applications to be considered as well. Shurberg then filed an appeal of the FCC's decision with the United States Court of Appeals for the District of Columbia Circuit, where it remains pending. *Shurberg Broadcasting of Hartford, Inc. v. FCC*, No. 84–1600 (D.C.Cir.).

On October 2, 1984 the plaintiff submitted its FOIA request to the FCC, requesting documents concerning Faith Center, and individuals and entities involved in the Faith Center proceedings before the FCC. On October 17, 1984 the FCC responded to plaintiff's request, noting that it construed the request as seeking materials relating only to Faith Center's last petition for distress sale,[1] and indicating that seven documents responsive to plaintiff's request had been located, as well as the videotape of the FCC's September 26, 1984 meeting. The FCC's October 17, 1984 response indexed and briefly described the items indicated. The videotape recording was withheld, however, pursuant to exemption 10 of the Sunshine Act, 5 U.S.C. § 552b(c)(10). Furthermore, all of the other documents were withheld pursuant to FOIA exemption (b)(5) which exempts inter-agency communication concerning internal decision-making, often referred to as the "deliberative process" exception to FOIA. Thereafter, on November 7, 1984, plaintiff filed this action for relief under FOIA and the Sunshine Act.

## I. *The Sunshine Act*

The Sunshine Act requires that meetings of all multi-membered federal agencies be conducted in public except in very limited, narrowly defined circumstances. 5 U.S.C. § 552b(b) & (c). As succinctly stated by Congress, the purpose of the Sunshine Act is to assure that the "government should conduct the public's business

in public." S.Rep. No. 94–354, 94th Cong., 1st Sess. (1975); *see also* H.R.Rep. No. 880, 94th Cong., 2d Sess. 2–4 (1976), U.S.Code Cong. & Admin.News 1976, p. 2183. In seeking to close a meeting, the agency bears the burden of establishing that its meeting is subject to at least one of ten statutorily defined grounds for closure. 5 U.S.C. § 552b(c); *Philadelphia Newspapers, Inc. v. NRC*, 727 F.2d 1195, 1200 (D.C.Cir.1984); *Common Cause v. NRC*, 674 F.2d 921, 928 (D.C.Cir.1982). Furthermore, even if one or more exemptions may justify closure of a portion of a particular meeting, the agency must attempt to segregate the non-exempt from the exempt portions, and close only those portions of the meeting involving exempt topics, unless, "after making such efforts, an agency can persuade the court that segregation of exempt and non-exempt topics 'would make a coherent discussion impossible'...." *Philadelphia Newspapers*, 727 F.2d at 1201 (quoting *Common Cause*, 674 F.2d at 936 n. 46).

In closing the September 26, 1984 meeting the defendant invoked exemption 10 of the Sunshine Act indicating that the meeting would concern a case of pending adjudication before the Commission, as well as pending litigation instituted against the Commission by Shurberg in the Court of Appeals for the District of Columbia Circuit. (Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, Exhibit 4.) Exemption 10 provides that portions of a meeting may be closed to the public if they

specifically concern the agency's issuance of a subpoena, or *the agency's participation in a civil action or proceeding,* an action in a foreign court or international tribunal, or an arbitration, *or the initiation, conduct, or disposition* by the agency of a particular case of formal agency adjudication pursuant to the procedures in section 554 of this title or otherwise involving a determina-

---

**1.** By failing to correct any inaccuracy of this construction of its request, the plaintiff has not exhausted its administrative remedies as to any

claim that the FCC improperly construed the request too narrowly.

tion on the record after opportunity for a hearing.

5 U.S.C. § 552b(c)(10) (emphasis added).

The record currently before this Court amply supports the conclusion that the September 26, 1984 meeting in fact involved discussion of Faith Center's distress sale petition as well as Shurberg's Petition for Extraordinary Relief, seeking initiation of the hearing on Faith Center's license renewal application and Shurberg's competing participation in that process. (Affidavit of Richard Shiben, filed January 18, 1985).

■ At the time of the September 26, 1984 meeting, the only matter pending before the Court of Appeals of this Circuit was Shurberg's petition for a writ of mandamus, seeking to compel the Commission to take some action on Shurberg's pending Petition for Extraordinary Relief. *In re Shurberg,* No. 84–5363 (D.C.Cir.) To the extent the September 26 meeting involves discussion of the Commission's strategy for compliance with the October 1, 1984 date set by the Court of Appeals, the meeting would be subject to closure. S.Rep. No. 354, 95th Cong. 1st Sess. 26 (1975) ("Public disclosure of an agency's legal strategy in a case before the agency or in the courts could make it impossible to litigate successfully the action.") However, this exception would not serve in itself to justify closure of all discussion of the merits of plaintiff's petition, but would at best require such consideration of the merits to be segregated from the Commission strategy discussions. Nevertheless, this Court finds that closure of the discussion of the merits of Faith Center's distress sale petition as well as Shurberg's petition for extraordinary relief, and hence closure of the entire September 26 meeting, was permissible under exemption 10 as matters concerning the conduct or initiation of formal agency adjudication.

The language of the Sunshine Act's exemption 10 permitting closure of meetings that "specifically *concern* ... the initiation, conduct, or disposition ... of a particular case of formal agency adjudication" has not been the subject of significant judicial review. *See Philadelphia Newspapers,* 727 F.2d at 1200. The plaintiff maintains that, although any hearing on Faith Center's application for renewal of its license would have been a formal on-the-record adjudicatory process, *see* 47 U.S.C. § 309(e), involving discovery and the presentation and cross-examination of witnesses before an administrative law judge pursuant to the procedures of the Administrative Procedure Act, 5 U.S.C. § 554–557, that hearing was never begun, but instead was avoided by the distress sale process, which is not part of the same formal adjudicatory process. The plaintiff points to the fact that the distress sale petition is presented to the full Commission, rather than an administrative law judge, and does not entail an adversarial process.

The Communications Act vests the FCC with broad discretion in structuring its own proceedings and resolving subordinate questions of procedure. *See FCC v. Schreiber,* 381 U.S. 279, 289, 85 S.Ct. 1459, 1467, 14 L.Ed.2d 383 (1965); *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 138, 60 S.Ct. 437, 439, 84 L.Ed. 656 (1940); *City of Angels Broadcasting v. FCC,* 745 F.2d 656, 664 (D.C.Cir.1984); *MCI Telecommunications Corp. v. FCC,* 712 F.2d 517, 533 (D.C.Cir.1983). The appeal of the FCC's December 7, 1984 decision, presently pending before the Court of Appeals of this Circuit, raises numerous questions of first impression concerning the nature of the proceedings involving Faith Center's distress sale petition and Shurberg's Petition for Extraordinary Relief, including the applicability of the FCC's prohibitions against *ex parte* contacts, *see Shurberg Broadcasting of Hartford, Inc. v. FCC,* No. 84–1600 (D.C.Cir.), Brief of Appellant, at 38–40, as well as the appropriate standard of review. *See, id.,* Appellant's Brief, at 9 n. 1. However, in considering plaintiff's Sunshine Act claim, this Court need not determine whether the consideration of a distress sale petition and related procedural matters is *per se* a formal adjudicatory process as one which is conducted on-the-record and subject to review on that basis. This Circuit's

decision in *Philadelphia Newspapers* indicates that the particular meeting for which closure is sought need not itself be formally part of the adjudicatory process to satisfy exemption 10. In *Philadelphia Newspapers* the Court found that the Nuclear Regulatory Commission could properly close a portion of a Commission meeting intended to discuss the reopening of the nuclear power facility at Three Mile Island to the extent those discussions pertained to matters that were the subject of a formal on-the-record proceeding. 727 F.2d at 1199–1202. The Court held that such closure was proper despite the fact that, in terms of the formal adjudicatory process, the on-the-record proceeding was at that time subject to review by an intermediate Appeals Board before being brought before the Commission itself. *Id.* at 1199. Consequently, under *Philadelphia Newspapers* exemption 10 may be properly invoked as to meetings concerning issues which are the subject of, or subject to, formal agency adjudication outside of the formal adjudicatory process itself.

Therefore, even if consideration of Faith Center's distress sale petition was outside of the actual hearing process for renewal applications, Faith Center's third request to attempt a distress sale and Shurberg's petition for extraordinary relief clearly concerned the initiation and conduct of that formal adjudicatory process, involving the Commission in determining whether the interests of the public in allowing competing applicants for the station should have at that point required denial of the distress sale petition and commencement of the renewal proceedings.

Accordingly, closure of the September 26 meeting was proper under exemption 10 of the Sunshine Act.

## II. *FOIA*

As originally filed with this Court, the FOIA aspect of plaintiff's complaint sought access to the first two items identified by the FCC's October 17 response: (1) A cover memorandum and draft of an opinion regarding Faith Center, with multiple copies bearing different handwritten marginal notes of staff members from the Commissioners' offices, Office of General Counsel, and the Mass Media Bureau; and (2) an intra-office memorandum from Zora Kramer, Assistant Director of Public Affairs for Minority Enterprises, to all Commissioners, dated September 24, 1984 regarding the then-pending Shurberg and Faith Center petitions.

Since the initiation of this action, however, the FCC has released to the plaintiff, in the course of the proceedings pending in the Court of Appeals, the Kramer memorandum identified as item two, as well as a second Kramer memorandum that was not identified by the FCC's October 17 response. In addition, the FCC has now indicated that no copy of item number one bearing notes of the Mass Media Bureau in fact exists, but instead was mistakenly so indicated in the October 17 response. *See* Declaration of June O. Stewart, at 4–8; Declaration of John F. Kamp.

The defendant has now indicated that it is no longer pursuing any claim of access to any document specifically identified by the FCC's October 17 response, but instead only its claim that the October 17 letter was itself not fully responsive to plaintiff's FOIA request. Plaintiff therefore opposes defendant's motion for summary judgment with respect to the FOIA claim, and requests that it be permitted to conduct discovery to determine whether there are any other documents responsive to plaintiff's FOIA request whose existence has not been disclosed. In maintaining that discovery is necessary, the plaintiff asserts that the adequacy and competency of the search conducted by the FCC, as well as the FCC's good faith in disclosing documents discovered during that search, are called into question by the fact that the FCC has released the first Kramer memorandum, which it originally refused to do, initially failed even to disclose the existence of the second Kramer memorandum, and listed a document as responsive to plaintiff's FOIA request which did not even exist.

The defendant maintains that the errors alleged by the plaintiff are overstated, and are insufficient to challenge its affidavits attesting to an adequate search and complete identification of all responsive documents. *See* Declaration of June O. Stewart; Affidavit of Lawrence S. Schaffner. Specifically, defendant maintains that no challenge to the adequacy or competency of the search, or the good faith of the agency in revealing the existence of responsive documents, can be based on the FCC's identification but initial withholding of the first Kramer memorandum. Furthermore, defendant asserts that it has adequately explained that the mistake in naming the Mass Media Bureau as a division having seen and commented on the draft opinion and cover memorandum was the result of an abundance of caution in responding to plaintiff's request under FOIA's time constraints, rather than the result of any bad faith on the part of the FCC. *See* Declaration of June O. Stewart; Declaration of John F. Kamp. Likewise, the defendant asserts that the failure to initially identify the second Kramer memorandum was inadvertent, and due to the necessity for a quick response to plaintiff's FOIA request, and could have been corrected earlier by the FCC itself if plaintiff had exercised its option to seek administrative review of the initial FOIA response.

Because the plaintiff has at this time abandoned any challenge to the exemptions claimed by the defendant for the documents identified in the October 17, 1984 response to its FOIA request, the only relevant issue is whether this Court should permit the plaintiff to conduct limited discovery concerning the adequacy of the search and the FCC's good faith in revealing the existence of documents responsive to the request.

▆▆▆ In Freedom of Information Act cases, as in all cases, summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Exxon Corp. v. Federal Trade Com-*

*mission,* 663 F.2d 120, 126 (D.C.Cir.1980); *Founding Church of Scientology of Washington, D.C. v. National Security Agency,* 610 F.2d 824, 836 (D.C.Cir.1979). In FOIA cases, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *National Cable Television Ass'n v. FCC,* 479 F.2d 183, 186 (D.C.Cir.1973). It is now well established in this Circuit, however, that the court may forego discovery and award summary judgment on the basis of affidavits which are relatively detailed, non-conclusory, and apparently submitted in good faith in the absence of any significant basis presented by the plaintiff for questioning their reliability. *Goland v. CIA,* 607 F.2d 339, 352–55 (D.C.Cir.1978). Moreover, such affidavits are to be considered "equally trustworthy when they aver that all documents have been produced as when they aver that identified documents are exempt." *Id.* at 352.

However, as this Circuit has also recognized, "the competence of any records search is a matter dependent upon the circumstances of the case...." *Founding Church of Scientology,* 610 F.2d at 834. Therefore, especially mindful of the disadvantage faced by the plaintiff in attempting to test the claims raised by the agency in a FOIA action, where the plaintiff has pointed to some countervailing factor calling into question the completeness of the agency's search or otherwise questioning the satisfactory nature of the agency's response, an issue of material fact, precluding the denial of discovery and award of summary judgment, may be recognized. *Id.* at 833–38; *Association of National Advertisers v. FTC,* 1976–1 Trade Cases ¶ 60,835 (D.D.C.1976); *see also Exxon Corp. v. Federal Trade Commission,* 466 F.Supp. 1088, 1094 (D.D.C.1978), *aff'd* 663 F.2d 120 (D.C.Cir.1980). Thus, under Rule 56(f), the district court may defer ruling on a motion for summary judgment and permit discovery so that the non-moving party may obtain the information necessary to show an issue of fact in dispute.

Thus, in *Association of National Advertisers* then-Chief Judge Jones of this Court emphasized that, where satisfactory basis for questioning their reliability, discovery in FOIA cases should be denied to avoid unnecessary harassment of agency officials. 1976–1 Trade Cases ¶ 60,835 at 68,-644. However, the court also recognized that if the plaintiff demonstrates "some substantial discrepancy between the defendant's actions and words" with respect to the search for documents, discovery is justified. On that basis, Judge Jones held in *National Association of Advertisers* that the plaintiff had raised a substantial question as to the completeness of the agency's search in seeking clarification of the agency's release of additional documents some six months after its initial release of documents and claim of exemption as to all other discovered documents. The Court held that this course of events, without any explanation from the agency, created at least an inference that the agency failed to discover the second group of documents in its initial search, and that the initial search was therefore perhaps incomplete or inadequate. Accordingly, the court permitted plaintiff discovery, through interrogatories only, limited to the issue of the reason for the initial failure to release the second group of documents.

Similarly, in the instant case, this Court finds that the defendant's failure to identify the existence of the second Kramer memorandum, and the absence of any sufficient explanation for that failure, raises a substantial issue of fact as to the adequacy of the initial search and the agency's good faith in identifying documents revealed by that search. The defendant has not supplied any affidavits to this Court addressing this failure, but has merely indicated in its pleadings that any "minor errors" in completing the initial index of discovered documents was the result of the difficulty in complying with the request under FOIA's time constraints. However, in light of the fact the plaintiff's FOIA request specifically requested documents pertaining to Faith Center including "any communications in the possession of, or written by or at the direction or request of Elzora Kramer," and the fact that defendant's affidavit concerning the process of the search indicates that plaintiff's request was forwarded directly to Zora Kramer of the Office of Public Affairs, Affidavit of June O. Stewart, this Court cannot simply accept that the failure to identify a document authored by Ms. Kramer was merely oversight at this juncture of the case. Rather, this Court finds that plaintiff should be permitted discovery to explore only the defendant's search and retreival procedures, and the defendant's initial failure to identify second Kramer memorandum. However, the plaintiff is limited to the use of interrogatories in exploring these issues. *See National Association of Advertisers*, 1976–1 Trade Cases ¶ 60,835 at 68,644.