NATURAL RESOURCES DEFENSE
COUNCIL, INC., et al.,
Petitioners,

v.

NUCLEAR REGULATORY COMMIS-
SION and United States of Amer-
ica, Respondents.

No. 99–1383.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 8, 2000.

Decided July 14, 2000.

David E. Adelman argued the cause for petitioners. With him on the briefs were Eric R. Glitzenstein and Howard Crystal.

Wendy M. Keats, Attorney, U.S. Department of Justice, argued the cause for respondents. With her on the brief were David W. Ogden, Acting Assistant Attorney General, Leonard Schaitman, Attorney, and John F. Cordes, Solicitor, U.S. Nuclear Regulatory Commission.

Before: EDWARDS, Chief Judge, RANDOLPH and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

The National Resources Defense Council, Inc. (NRDC)[1] asks us to vacate a regulation, promulgated by the Nuclear Regulatory Commission, that defines the term "meeting" for purposes of the Government in the Sunshine Act, 5 U.S.C. § 552b. The Sunshine Act requires that gatherings of members of certain agencies be open to the public if they constitute "meetings" under the Act. NRDC argues that the Commission's regulation is inconsistent with the text and legislative history of the statute. It further contends that the regulation is improper because it fails to provide procedural safeguards necessary to facilitate effective relief in the event that a meeting is improperly closed to the public.

We deny the petition for review. We are unable to accept NRDC's first argument because the Commission has done nothing more than adopt, verbatim, the Supreme Court's own interpretation of the meaning of "meeting" under the Act, as set forth in *FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984). We are unable to accept the second argument because it conflicts with the Court's injunction

1. NRDC is joined by a number of other public interest groups. For ease of reference, this opinion will refer to these parties collectively as "NRDC" or "petitioner."

against imposing non-statutory procedural requirements on agency decisionmaking, as set forth in *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

## I

The Sunshine Act provides, with ten specified exemptions, that "every portion of every *meeting of an agency* shall be open to public observation." 5 U.S.C. § 552b(b) (emphasis added). It imposes procedural requirements to ensure, inter alia, that advance notice is given to the public before agency meetings take place. *See id.* § 552b(e). It also imposes procedural requirements an agency must follow before determining that one of the ten exemptions from the openness requirement applies. *See id.* § 552b(d), (f). However, neither the openness requirement, nor the related procedural requirements, are triggered unless the governmental entity at issue is an "agency," and unless the gathering in question is a "meeting" of that agency.

■■■ For purposes of the Act, "agency" is defined as an executive branch authority or independent regulatory agency "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate." *Id.* § 552b(a)(1) (cross-referencing 5 U.S.C. § 552(e), subsequently redesignated § 552(f)). In addition, as will become relevant in our later discussion of the *ITT* case, the definition of "agency" extends to "any subdivision thereof authorized to act on behalf of the agency." *Id.* § 552b(a)(1). The Nuclear Regulatory Commission is an agency covered by the Act. *See Philadelphia Newspapers, Inc. v. NRC*, 727 F.2d 1195, 1199–1200 (D.C.Cir.1984).[2]

The Sunshine Act defines the term "meeting" as "the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business...." 5 U.S.C. § 552b(a)(2). The Commission's original Sunshine Act regulation, adopted in 1977, merely reproduced the language of the statutory definition. *See* 42 Fed. Reg. 12,875, 12,877 (1977).[3] It also clarified the kinds of communications not subject to the Act, explicitly excepting only social gatherings, and briefings of the Commission by outsiders where discussion was informational and without specific reference to pending Commission matters. *See id.* Under the 1977 regulation, the Commission "treated every discussion of agency business by three or more Commissioners, no matter how informal or preliminary it might be, as a 'meeting' for Sunshine Act purposes." 64 Fed.Reg. 24,936, 24,937 (1999).

In 1984, the Supreme Court decided *ITT*. In the course of its opinion, the Court said the following about the term "meeting" under the Act:

> This statutory language contemplates discussions that effectively predetermine official actions. Such discussions must be sufficiently focused on discrete proposals or issues as to cause or to be likely to cause the individual participating members to form reasonably firm positions regarding matters pending or likely to arise before the agency.

466 U.S. at 471, 104 S.Ct. 1936 (citations and quotation marks omitted). In 1985, noting the decision in *ITT*, the Commission issued an "interim" rule that revised the definition of "meeting" by appending the Supreme Court's definition, verbatim, to the language of the prior regulation. *See* 50 Fed.Reg. 20,889 (1985). The 1985 rule stated:

---

**2.** The Nuclear Regulatory Commission is composed of five members appointed by the President and confirmed by the Senate. *See* 42 U.S.C. § 5841.

**3.** The Sunshine Act requires each covered agency to promulgate implementing regulations. *See* 5 U.S.C. § 552b(g).

"Meeting" means the deliberations of at least a quorum of Commissioners where such deliberations determine or result in the joint conduct or disposition of official Commission business, *that is, where discussions are sufficiently focused on discrete proposals or issues as to cause or to be likely to cause the individual participating members to form reasonably firm positions regarding matters pending or likely to arise before the agency.*

*Id.* at 20,891 (codified at 10 C.F.R. § 9.101(c)) (new language in italics).

The 1985 rule was controversial. In response to criticism, the Commission announced that it would not conduct non-Sunshine Act discussions until it put into place procedures to govern such discussions. Before the Commission completed those procedures, the American Bar Association's Administrative Law Section announced its intention to consider the issue, and the Commission decided to defer implementation of the 1985 rule pending receipt of the ABA's views. *See* 64 Fed.Reg. at 24,938. In 1987, the ABA issued its recommendations, which urged federal agencies and courts to interpret the term "meeting" as the Commission had proposed in 1985—by using the Supreme Court's language in *ITT*. *See* ABA Section of Administrative Law, Report to House of Delegates (J.A. at 460).[4] Despite the ABA's recommendations, the Commission took no further action. Although the "interim" rule of 1985 remained on the books, the agency continued to apply its pre–1985 regulation.

In May 1999, the Commission published, for notice and comment in the *Federal Register,* its intention to implement the 1985 rule's definition of "meeting." The Commission stated that its purpose was "to bring the NRC's Sunshine Act regulations, and the way they are applied by NRC, into closer conformity with Congressional intent, as set forth in the legislative history of the Sunshine Act and as clarified in [*ITT*]." 64 Fed.Reg. at 24,936. In the Commission's view, Congress had "carefully weighed the competing considerations involved: the public's right of access to significant information, on the one hand, and the agencies' need to be able to function in an efficient and collegial manner on the other." *Id.* at 24,939. "Congress," the Commission said, had "struck a balance: it did not legislate openness to the maximum extent possible, nor did it provide unfettered discretion to agencies to offer only as much public access as they might choose." *Id.* The notice listed a number of examples of topics that might be the subject of non-Sunshine Act discussions under the new rule, "so long as the discussion will not effectively predetermine final agency action." *Id.* at 24,941. The topics included: "How well is the agency functioning, what are our successes and failures, what do we see as major challenges in the next five and ten years, what is the state of our relations with the public, industry, Congress, the press?" *Id.* at 24,941–42.[5] A final order implementing the rule became effective on August 23, 1999. 64 Fed.Reg. 39,393 (1999).

## II

This court has authority to set aside agency regulations that are "not in accord with" the requirements of the Sunshine Act. 5 U.S.C. § 552b(g). That, NRDC contends, is how the Commission's definition of "meeting" should be characterized. We consider this contention below.

## A

■ In petitioner's view, the agency's definition of "meeting" is fundamentally

---

4. The Administrative Law Section issued its recommendations in 1986; the ABA adopted them in February 1987. *See* 64 Fed.Reg. at 24,938.

5. The Commission subsequently advised Congress and this court that discussions focused on specific pending matters, such as licensing and restart authorizations, will not take place except in "meetings" covered by the Sunshine Act. *See* NRC Br. at 36; *see also* J.A. at 240, 245, 357 (letters to members of Congress).

inconsistent with both the language and legislative history of the Act. NRDC's argument concerning the statutory language cannot be easily dismissed. The Act states that the term "meeting" means the deliberations of a quorum of an agency, "where such deliberations determine *or* result in the joint conduct *or* disposition of official agency business." 5 U.S.C. § 552b(a)(2) (emphasis added). Selecting from the "or" clauses, the statutory definition of "meeting" would appear to include any deliberations that "result in the joint conduct . . . of official agency business," even if they do not "determine" either the joint conduct or disposition of that business. The Commission's definition, on the other hand, is limited to deliberations that are "likely to cause the individual participating members to form reasonably firm positions regarding" the matter—that is, to deliberations that "effectively predetermine final agency action." 64 Fed.Reg. at 24,941. Indeed, the Commission's examples of what it regards as outside the scope of "meetings" demonstrate the potential divergence between its definition and the literal statutory language. As NRDC argues, surely formal agency discussions of "how well" the agency is functioning, of its "successes and failures," of its "major challenges in the next five and ten years," and of the state of its "relations with the public, industry, Congress, [or] the press" qualify as the "joint conduct of official

agency business," even if they do not predetermine agency decisions.[6]

Nor are NRDC's arguments concerning legislative intent frivolous. As petitioner points out, the Act begins with a declaration of policy that "the public is entitled to the fullest practicable information regarding the decisionmaking processes of the Federal Government." Pub.L. No. 94–409, § 2, 90 Stat. 1241, 1241 (1976).[7] In our own decision below in *ITT*, we made the same point. *See* 699 F.2d 1219, 1243 (D.C.Cir.1983) ("[T]he Act's presumption of openness requires that all doubts be resolved against closure."), *rev'd,* 466 U.S. 463, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984). NRDC also notes that in an opinion issued prior to the Supreme Court's decision in *ITT*, this court pointed out that the Sunshine Act, unlike the Freedom of Information Act (FOIA), 5 U.S.C. § 552, lacks an express exemption for predecisional matters. *See Common Cause v. NRC,* 674 F.2d 921, 929 (D.C.Cir.1982); *see also ITT,* 699 F.2d at 1241 ("The broad sweep of the Sunshine Act does not support a distinction between an agency's *predecisional* actions and its *postdecisional* efforts to implement, interpret, and promote its policies.").[8] And NRDC emphasizes, as we did in the decision reviewed by the Supreme Court in *ITT*, that the examples the legislative history provides of discussions excluded from the Act

---

6. Even on a literal reading, however, it is not enough that discussions constitute joint conduct of official business; to come with the term "meeting," such discussions must be "deliberations" that "result in" such joint conduct. 5 U.S.C. § 552b(a)(2).

7. *See also* H.R.REP. No. 94–880, pt. 1, at 2 (1976) ("Absent special circumstances, there is no reason why the public should not have the right to observe the agency decisionmaking process first hand."). The Commission notes, however, that the Act's declaration of policy goes on to state that "the purpose of this Act [is] to provide the public with such information while protecting the rights of individuals and the ability of the Government to carry out its responsibilities." Pub.L. No. 94–409, § 2, 90 Stat. at 1241.

8. The Commission argues that "predecisional" is not necessarily synonymous with "predeterminative," the adjective it uses for drawing the line between meetings and non-meetings. According to the agency, under its definition "'predecisional' matters fall on both sides of the Sunshine Act divide." NRC Br. at 38 n.18; *see also Common Cause,* 674 F.2d at 930 (" 'The meetings opened by [the Act] are not intended to be merely reruns staged for the public after agency members have discussed the issue in private and *predetermined* their views.' ") (quoting S.REP. No. 94–354, at 18 (1975)) (emphasis added). *Common Cause* did not address the definition of "meeting" under the Act, but rather whether any of the Act's express exemptions authorized the closure of budget discussions that were conceded to be meetings. *See* 674 F.2d at 926.

are largely limited to "passing references to agency business at social gatherings, casual background conversations in offices and corridors, banter at the golf course, and breakfast or luncheon discussions among members about the day's business." 699 F.2d at 1243 (footnotes omitted).[9] All of this, petitioner argues, supports the notion that Congress intended to except only "casual" conversation from the definition of "meeting"—not formal discussions about the agency's business, even if such discussions are not likely to be predeterminative.

NRDC acknowledges that the Senate Report on the Sunshine Act declares that "... the agency must be careful not to cross over the line and engage in discussions which effectively predetermine official actions." S.REP. No. 94–354, at 19 (1975). But petitioner contends that the Commission cites this sentence out of context, as it comes from a passage that discusses the particular problems of three-member agencies, in which any two members would necessarily constitute a quorum.[10] Indeed, the full sentence begins with the words, "When two members constitute a quorum," which fill the space indicated by the ellipses above. NRDC argues that Congress did not intend the sentence to apply outside the three-member agency context, and that it therefore has no application to the five-member Nuclear Regulatory Commission. *But see infra* note 12.

■ In short, were we authorized to decide the validity of the Commission's definition of "meeting" de novo, NRDC's arguments would give us some pause. NRDC contends that we are in fact so authorized, because courts do not accord deference to an agency's statutory interpretation where the statute at issue, like the Sunshine Act, "impose[s] general obligations on [many] governmental agencies." *NRDC v. Defense Nuclear Facilities Safety Bd.*, 969 F.2d 1248, 1250–51 (D.C.Cir. 1992).[11] But while we may not have to defer to the views of the Nuclear Regulatory Commission, the views of the Supreme Court are another matter. Because the Commission's definition is taken *in haec verba* from the Court's unanimous opinion in *ITT*, we now turn to an examination of that case.

---

**9.** *See also* S.REP. No. 94–354, at 18 ("[B]rief references to agency business where the Commission members do not give serious attention to the matter do not constitute a meeting."); 122 CONG. REC. 28,474 (Aug. 31, 1976) (remarks of Rep. Fascell) (stating that the definition of "meeting" "is intended to permit casual discussions between agency members that might invoke the bill's requirements under the less formal 'concern' standard").

**10.** The passage reads as follows:

In three-member agencies, two members will constitute a quorum.... It is not the intent of the bill to prevent any two agency members, regardless of agency size, from engaging in informal background discussions which clarify issues and expose varying views. When two members are less than a quorum, such discussions would not in any event come under the section's open meeting requirements. When two members constitute a quorum, however, the agency must be careful not to cross over the line and engage in discussions which effectively predetermine official actions.

S.REP No. 94–354, at 19.

**11.** *See Reporters Committee for Freedom of Press v. U.S. Dept. of Justice*, 816 F.2d 730, 734 (D.C.Cir.1987) (applying de novo review to agency interpretation of FOIA), *rev'd on other grounds*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *see also Salleh v. Christopher*, 85 F.3d 689, 692 (D.C.Cir.1996) (declining to accord deference where multiple agencies were granted authority to interpret same statute). The customary deference mandated by *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), would not apply here in any event because, as discussed below, the Supreme Court has already determined the meaning of the term "meeting" under the Act. *See Maislin Indus. v. Primary Steel, Inc.*, 497 U.S. 116, 131, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of *stare decisis*, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning.").

**B**

The question before the Court in *ITT* was whether the Sunshine Act applied to informal international conferences attended by members of the Federal Communications Commission (FCC). The conferences, referred to as the Consultative Process, were intended to facilitate joint planning of telecommunications facilities. In the hope of persuading European nations to cooperate with its policy of encouraging competition in overseas telecommunications services, the FCC added the topic of new carriers and services to the agenda. *See* 466 U.S. at 465, 104 S.Ct. 1936. ITT, which opposed the entry of new competitors, contended that the Consultative Process sessions constituted "meetings" of the FCC and that the Sunshine Act therefore required that they be held in public. *See id.* at 465–66, 104 S.Ct. 1936. This circuit agreed. *See ITT*, 699 F.2d at 1246–50. The Supreme Court, however, reversed, holding that "the participation by FCC members in these sessions constitutes neither a 'meeting' as defined by § 552b(a)(2) nor a meeting 'of the agency' as provided by § 552b(b)." *ITT*, 466 U.S. at 469, 104 S.Ct. 1936.

Writing for the Court, Justice Powell undertook an examination of the Sunshine Act's legislative history in order to determine the appropriate definition of the word "meeting." As the Nuclear Regulatory Commission does here, he emphasized those portions of the history suggesting an intent to balance the interest in openness with administrative concerns. "[I]n drafting the Act's definition of 'meeting,'" the Court said, Congress "recognized that the administrative process cannot be conducted entirely in the public eye." 466 U.S. at 469, 104 S.Ct. 1936. Quoting the Senate Report, the Court continued: " '[I]nformal background discussions [that] clarify issues and expose views' are a necessary part of an agency's work." *Id.* (quoting S.REP. No. 94–354, at 19). Because it believed that applying the Act in such contexts "would prevent such discussions and thereby impair normal agency operations,"

the Court concluded that the Act's definition did not encompass them. *Id.*

In a footnote, Justice Powell examined the evolution of the statutory language defining the term "meeting." That evolution, he said, "reflects the congressional intent precisely to define the limited scope of the statute's requirements." *Id.* at 470 n. 7, 104 S.Ct. 1936. In particular, he noted that "the Senate substituted the term 'deliberations' for the previously proposed terms—'assembly or simultaneous communication' or 'gathering'—in order to 'exclude many discussions which are informal in nature.' S.REP. No. 94–354, at 10." *Id.* (other citations omitted). Justice Powell also noted that although "earlier versions of the Act had applied to any agency discussions that 'concer[n] the joint conduct or disposition of agency business,'" the final version applied "only to deliberations that *'determine or result in'* the conduct of *'official* agency business.'" *Id.* (citations omitted). "The intent of the revision," he inferred, "clearly was to permit preliminary discussion among agency members." *Id.* (citations omitted).

Finally, the Court turned to the same passage of the Senate Report that we referred to at the end of Part II.A above—the passage NRDC contends applies only to three-member agencies. Relying on that language, the Court concluded that the statutory definition of "meeting" "contemplates discussions that 'effectively predetermine official actions.'" *Id.* at 471, 104 S.Ct. 1936 (quoting S.REP. No. 94–354, at 19). This conclusion was stated without qualification—without any suggestion that it was limited to three-member agencies. To the contrary, the Court went on to endorse a definition of "meetings" recommended for all agencies in the Interpretive Guide published by the Office of the Chairman of the Administrative Conference of the United States (ACUS):

Such discussions must be "sufficiently focused on discrete proposals or issues as to cause or to be likely to cause the individual participating members to

form reasonably firm positions regarding matters pending or likely to arise before the agency." R. Berg & S. Klitzman, An Interpretive Guide to the Government in the Sunshine Act 9 (1978). *Id.*[12] This is the definition that the Nuclear Regulatory Commission subsequently adopted as its own definition of "meeting," and that NRDC now challenges as unlawful.

Having settled upon a definition of "meeting," *ITT* then applied it to the Consultative Process sessions at issue in the case. The Court noted that the three FCC commissioners who attended those sessions constituted a quorum of the FCC's Telecommunications Committee, to which the Commission had delegated the power to approve applications for common carrier certification. The Committee was therefore a " 'subdivision ... authorized to act on behalf of the agency' " with respect to such applications, and hence was itself an "agency" within the Sunshine Act's definition. 466 U.S. at 470–71, 104 S.Ct. 1936 (quoting 5 U.S.C. § 552b(a)(1)). But while the Court found the Committee to be covered by the Act, it concluded that the members had not engaged in discussions that effectively predetermined official actions. The Court noted that ITT had "alleged neither that the Committee formally acted upon applications for certification at the Consultative Process sessions nor that those sessions resulted in firm positions on particular matters pending or likely to arise before the Committee." *Id.* at 471, 104 S.Ct. 1936. Rather, the Court said, "the sessions provided general background information" and permitted the commissioners to engage in an exchange of views with their foreign counterparts "by which decisions already reached by the Commis-

sion could be implemented." *Id.* at 472, 104 S.Ct. 1936.

Justice Powell did note that this court had reached a contrary result. He observed, however, that we had done so not by finding that the commissioners were deliberating "upon matters within their formally delegated authority"—i.e., applications for certification—but rather upon matters within some "undisclosed authority, not formally delegated, to engage in discussions on behalf of the Commission." *Id.* at 472, 104 S.Ct. 1936. Such deliberations, the Supreme Court said, are not covered by the Sunshine Act at all. Again quoting the definition of "agency" rather than "meeting," the Court noted that the only covered deliberations are those by a " 'subdivision ... authorized to act on behalf of the agency.' " *Id.* at 472, 104 S.Ct. 1936 (quoting, without citation, § 552b(a)(1)). The Act only applies, the Court said, "where a subdivision of the agency deliberates upon matters that are within that subdivision's formally delegated authority to take official action for the agency." *Id.* Because "the Telecommunications Committee at the Consultative Process sessions did not consider applications for common carrier certification—its only formally delegated authority—... the sessions were not 'meetings' within the meaning of the Sunshine Act." *Id.* at 473, 104 S.Ct. 1936.

C

On its face, the Supreme Court's decision in *ITT* would appear to end this appeal, as the definition of "meeting" adopted by the Nuclear Regulatory Commission is the same as that endorsed and applied by the Court in that case. NRDC

---

12. The Supreme Court noted that "the Office of the Chairman of the Administrative Conference of the United States prepared the Interpretive Guide at Congress' request, § 552b(g), and after extensive consultation with the affected agencies." 466 U.S. at 471 n. 10, 104 S.Ct. 1936. The ACUS guide expressly rejected the suggestion that the quotation from the Senate Report was limited to three-member agencies: "[T]he passage necessarily has broader application, since there is nothing in the statute which supports a special definition of 'meeting' for agencies where two members make up a quorum." Interpretive Guide at 6. We agreed with that view in our opinion below in *ITT*. *See* 699 F.2d at 1243 n. 163 (quoting Interpretive Guide at 6).

contends, however, that for a number of reasons *ITT* is a much narrower opinion than the Commission believes it to be, and that the decision's definition of "meeting" is at best unauthoritative dictum—unnecessary to its holding and nonbinding upon this court.

NRDC argues, first, that *ITT* involved only the limited question of whether the Sunshine Act applies where fewer than a quorum of the agency's members attend international conferences, and where those members have not been "formally delegated authority to take official action for the agency." NRDC Br. at 25 (quoting *ITT*, 466 U.S. at 472, 104 S.Ct. 1936). The Supreme Court's "central rationale," petitioner contends, was that the Act "applies only where a subdivision of the agency deliberates upon matters that are within that subdivision's formally delegated authority." *Id.* (quoting *ITT*, 466 U.S. at 472–73, 104 S.Ct. 1936). Because the Telecommunications Committee lacked delegated authority to deliberate on the business discussed at the conferences, the Act did not apply. The Court's other language, petitioner suggests, was simply dictum.

As our description of *ITT* makes clear, however, this was not the central—or even a sufficient—rationale for the Court's decision. Before considering the Committee's discussions on subjects as to which it did not have delegated authority, the Court first addressed those as to which it did: namely, applications for common carrier certification. As to any discussions on that subject, the Court concluded that the Committee had not participated in "meetings" because—in the words of the Interpretive Guide and now of the Commission's rule—such discussions were not "likely to cause the individual participating members to form reasonably firm positions regarding matters pending or likely to arise before the agency." 466 U.S. at 471, 104 S.Ct. 1936. It was only when the Court went on to examine the rationale of this court below that it considered the Committee's discussions on subjects as to which it did not have delegated authority, and found those

discussions to be outside the Act. Because that finding could not have sufficed to resolve whether discussions as to which the committee *did* have authority constituted meetings, the definition the Court relied upon to decide that question cannot be characterized as dictum.

■ NRDC also contends that in applying its definition of "meeting," the Court faced only the narrow question of whether discussions on topics that the Commission had already decided were included. Petitioner is correct that the discussions in *ITT* did involve an "exchange of views by which decisions already reached by the Commission could be implemented." *Id.* at 472, 104 S.Ct. 1936. But the Court only relied on that fact to conclude that the discussions did not "result[ ] in firm positions on particular matters pending or likely to arise before the Committee"—i.e., that the discussions necessarily could not have "predetermined" official decisions because the decisions had already been made. *Id.* at 471, 104 S.Ct. 1936. The Court gave no hint that its opinion was limited to this unique situation, and nothing in the Court's definition of "meeting," or in the Interpretive Guide upon which it was based, supports such a reading. Although *ITT* may be factually distinguished from the instant case on this ground, we are not free to turn every factual distinction into a reason for ignoring the Supreme Court's considered guidance.

NRDC does correctly point out that there was a second, truly independent ground for the Court's decision in *ITT*— one to which we have averred, but not yet described. In a single paragraph at the end of the opinion, the Court concluded that not only were the Consultative Process sessions not "meetings" within the meaning of the Sunshine Act, they were also not meetings of an "agency." The international sessions were not meetings of an "agency," the Court said, because the FCC did not convene them and could not unilaterally control their procedures. *Id.* at 473, 104 S.Ct. 1936.

There is no question that this rationale was an independent basis for the Supreme Court's decision: to come within the Sunshine Act, discussions must be both "meetings" and meetings of an "agency," and the Court concluded that the Consultative Process sessions were neither. *See id.* at 469, 104 S.Ct. 1936. Nonetheless, "where there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, 'the ruling on neither is obiter [dictum], but each is the judgment of the court, and of equal validity with the other.'" *Dooling v. Overholser,* 243 F.2d 825, 828 (D.C.Cir.1957) (quoting *United States v. Title Ins. & Trust Co.,* 265 U.S. 472, 486, 44 S.Ct. 621, 68 L.Ed. 1110 (1924)); *see Woods v. Interstate Realty Co.,* 337 U.S. 535, 536, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) ("Where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*."). Moreover, even if the Court's reliance on two independent grounds rendered each dictum, we would still be bound by its interpretation of the term "meeting," since "'[c]arefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative.'" *United States v. Oakar,* 111 F.3d 146, 153 (D.C.Cir.1997) (quoting *Doughty v. Underwriters at Lloyd's, London,* 6 F.3d 856, 861 n. 3 (1st Cir.1993)); *see also Bangor Hydro–Elec. Co. v. FERC,* 78 F.3d 659, 662 (D.C.Cir. 1996). As our above recitation of *ITT* makes clear, the Supreme Court's language was carefully considered, following as it did the Court's detailed review of the Act's legislative history and its adoption of the formulation in ACUS' own detailed guide.

Finally, NRDC contends that the Commission's definition will undermine the purposes of the Act. Petitioner argues that the Commission's definition should be vacated because it eliminates an "objective" rule and replaces it with a "vague, wholly subjective standard" that, if permit-

ted to stand, "will fatally undermine the Sunshine Act" and "make abuse inevitable." NRDC Br. at 11, 23. It is impossible to conceive, NRDC argues, that the kinds of discussions the Commission describes as non-meetings could occur without at least one commissioner formulating a reasonably firm position on a matter before the agency. Thus, petitioner urges, the Commission's rule "is contrary to the Act." *Id.* at 24.

In many ways, NRDC's argument echoes points made by this court in its decision below in *ITT. See* 699 F.2d at 1244. In its own decision, however, the Supreme Court instructed that the definition now adopted by the Commission is the one that Congress itself intended. Because the Commission's definition is therefore that of the Act itself, it neither can be contrary to the Act nor can it fatally undermine it.[13]

### III

In the alternative, NRDC argues that even if the Commission's rule is consistent with the statutory definition, we should "find it illegal for the NRC to implement the rule without minimal procedural safeguards," such as maintaining complete records of all closed, non-Sunshine Act discussions. NRDC Br. at 13. Such procedures are necessary, petitioner maintains, because the Commission cannot be trusted "to determine unilaterally when they are starting to form 'reasonably firm positions'—and hence when public access is required." *Id.* Without a contemporaneous written record, judicial review of whether the agency is improperly closing meetings will assertedly not be possible.

NRDC does not argue that its proposed procedures are required by the Sunshine Act itself, and they plainly are not. As the Senate Report made clear: "Any meeting falling outside the definition [in § 552b(a) ] is not subject to any of the other provisions of the bill." S.REP. No.

---

**13.** For like reasons, we reject NRDC's suggestion that we vacate the Commission's definition because "there is no prospect that it will

solve the NRC's purported 'collegiality' deficit, which is the ostensible rationale for the rulemaking." NRDC Br. at 28.

94–354, at 19. This dooms petitioner's challenge because, under the Supreme Court's decision in *Vermont Yankee,* " 'absent constitutional constraints or extremely compelling circumstances' courts are *never* free to impose on the NRC (or any other agency) a procedural requirement not provided for by Congress." *Union of Concerned Scientists v. NRC,* 920 F.2d 50, 53 (D.C.Cir.1990) (quoting *Vermont Yankee,* 435 U.S. at 543, 98 S.Ct. 1197); *see also Envirocare of Utah, Inc. v. NRC,* 194 F.3d 72, 78 (D.C.Cir.1999). The Commission is, of course, at liberty to adopt additional procedures in the exercise of its discretion, *see Vermont Yankee,* 435 U.S. at 524, 98 S.Ct. 1197, and in this case it has done so: The agency has undertaken to keep a record of the date, subject, and participants for any scheduled nonSunshine Act discussions among a quorum of commissioners for an initial six month period, and has stated that it will not discontinue this practice without advance notice to the public. *See* 64 Fed.Reg. at 39,395; *see also* 64 Fed.Reg. at 24,942. We, however, are without authority to impose such procedural requirements against the Commission's will.

In response to the obstacle posed by *Vermont Yankee,* NRDC makes two arguments based on analogies to litigation under FOIA. First, it notes that when an agency claims that documents are not covered by FOIA, a court may conduct an *in camera* review to assess the validity of the agency's claims. *See, e.g., Spirko v. United States Postal Serv.,* 147 F.3d 992, 996 (D.C.Cir.1998). The distinctions between *in camera* review and the procedures re-

quested by NRDC, however, are plain. *In camera* review is expressly authorized by FOIA, *see* 5 U.S.C. § 552(a)(4)(B),[14] as it is by the Sunshine Act, *see id.* § 552b(h)(1). Moreover, *in camera* review of an agency's records does not require the agency to add any administrative procedures or create any new documents; requiring the Commission to keep minutes of its non-Sunshine Act discussions would do both.

Second, NRDC points out that in FOIA litigation, this circuit requires an agency to provide a plaintiff with a *"Vaughn* index," a description of and detailed justification for the non-disclosure of each withheld document. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973); *see also Spirko,* 147 F.3d at 997–98. But while this judicial rule does require an agency to create a document (the index) that would not otherwise exist, it is a rule that governs litigation in court and not proceedings before the agency. In particular, it is a rule the circuit imposed because FOIA itself places the burden on the agency to sustain the lawfulness of specific withholdings in litigation. *See Vaughn,* 484 F.2d at 825–26, 828; *see also* 5 U.S.C. § 552(a)(4)(B). The Sunshine Act likewise imposes the burden of justifying specific closures on the agency, and expressly authorizes the court to "take such additional evidence as it deems necessary" to decide such cases. 5 U.S.C. § 552b(h)(1). But this authorization, like the analogous one in FOIA, applies only to suits charging violations of the Act with respect to specific agency meetings[15]—not to petitions like this one, which challenge an agency's implementing regulations on their face.[16] Neither *Vaughn,* nor the

---

**14.** The express authorization was not added to FOIA until 1974. *See* Pub.L. No. 93–502, § B(2), 88 Stat. 1561, 1561–62 (1974) (codified in relevant part at 5 U.S.C. § 552(a)(4)(B)). Previously, trial courts conducted such reviews on the rationale noted in the text below: i.e., in their role as triers of fact endeavoring to determine whether the government had met its burden of justifying specific nondisclosures. *See Vaughn v. Rosen,* 484 F.2d 820, 825 (D.C.Cir.1973).

**15.** Section 552b(h)(1) grants district courts jurisdiction over actions "to enforce the re-

quirements" of the Act. "Such actions may be brought by any person against an agency prior to, or within sixty days after, the meeting out of which the violation of this section arises...." 5 U.S.C. § 552b(h)(1). In such cases, the "burden is on the defendant to sustain his action," and the court may make *in camera* examinations "and may take such additional evidence as it deems necessary." *Id.*

**16.** *See* 5 U.S.C. § 552b(g). This section authorizes any person to "bring a proceeding in the United States Court of Appeals for the

Sunshine Act, authorizes this court to impose additional procedures on the conduct of administrative rather than judicial proceedings.

## IV

Because the Supreme Court's decision in *ITT* renders petitioner's challenge to the Commission's definition of "meeting" unavailing, and because the Court's decision in *Vermont Yankee* bars us from imposing the additional procedural requirements NRDC seeks, the petition for review is denied.

District of Columbia to set aside agency regulations" promulgated to implement the requirements of the Act.