PUBLIC UTILITY DISTRICT NO.
1 OF SNOHOMISH COUNTY,
Washington, Plaintiff,

v.

FEDERAL ENERGY REGULATION
COMMISSION, et al.,
Defendants.

No. CIV. 03–1134(RBW).

United States District Court,
District of Columbia.

June 30, 2003.

## *MEMORANDUM OPINION*

WALTON, District Judge.

This matter comes before the Court on plaintiff Public Utility District No. 1 of Snohomish County, Washington's ("Public Utility") Motion for Temporary and Preliminary Injunctive Relief and Expedited Discovery ("Pl.'s Mot."), and defendant Federal Energy Regulatory Commission's ("FERC") opposition thereto. Currently pending before the FERC is a complaint filed by the plaintiff pursuant to section 206 of the Federal Power Act, 16 U.S.C. § 824e, challenging a contract it entered into with Morgan Stanley Capital Group Inc. ("Morgan Stanley"), which was executed during the 2000–2001 energy crisis that the plaintiff asserts "contain[s] grossly one-sided terms, conditions, and price[s] that arose because of the severe dysfunction of the Western electric markets occurring at that time." *See* Pl.'s Mot., Memorandum in Support of Motion for Temporary and Preliminary Injunctive Relief and Expedited Discovery ("Pl.'s Mem.") at 3. On December 19, 2002, following evidentiary hearings before a FERC administrative law judge ("ALJ"), the ALJ determined that the plaintiff's complaint, along with several other similar complaints that had been filed as a result of contracts executed in California, Wash-

ington, and Nevada during this same energy crisis, should be dismissed and that these long-term energy contracts should be enforced. *See* Memorandum of Points and Authorities in Opposition to Motion of Public Utility District No. 1 of Snohomish County, Washington for Temporary and Permanent Injunctive Relief and Expedited Discovery ("Defs.' Mem.") at 3 (citing *Nevada Power Co., et al., v. Enron Power Marketing, Inc., et al.,* 101 FERC ¶ 63,031 (2002)). Plaintiff Public Utility, along with several of the other parties who had also initiated contract abrogation cases with the FERC, appealed the ALJ's decision to the FERC. On March 26, 2003, while the appeal before the FERC was pending, the FERC conducted an open meeting to discuss its staff's Final Report on Price Manipulation in Western Markets, at which time the contract abrogation cases were also discussed by all three FERC commissioners. Following this open meeting and a subsequent press conference, two of the three commissioners who currently hold positions on the FERC, Chairman Patrick Henry Wood III and Commissioner Nora Mead Brownell, allegedly participated in a private telephone conference in which the energy contracts that are the subject of the abrogation cases were discussed with approximately twenty representatives of the energy market, financial institutions, investment houses, and investor rating services. One of the participants in this telephone conference was Morgan Stanley, which according to the plaintiff, has a "direct pecuniary interest not only in the complaint case filed by [Public Utility], but in a number of similar complaint cases filed at FERC by other parties." Pl.'s Mem. at 4. The plaintiff asserts that this telephone conference violated the Sunshine Act, 5 U.S.C. § 552b (2000), and it seeks "temporary and preliminary injunctive relief enjoining future violations of the Sunshine Act by FERC, [and the disquali-

fication of] Chairman Wood and Commissioner Brownell ... from further consideration of all cases illegally discussed at the March 26, 2003 Secret Teleconference ..." *Id.* at 52–53.

## I. *The FERC Proceedings*

A brief recitation of the proceedings before the FERC in this matter is a necessary predicate to addressing the merits of the plaintiff's request. On April 7, 2003, after becoming aware of the alleged private telephone conference, the plaintiff filed a motion with the FERC requesting that it disclose all communications made during this telephone conference. In response, the FERC published on its website a "Revised Summary of events relating to the FERC conference call with the investment community on 3/26/03 re Nevada Power Co. & Sierra Pacific Power Co. v. Enron Power Marketing, Inc, El Paso Merchant Energy, et al under EL02–28 et al" and a list of financial analysts invited to participate in this conference call. *Id.* at 6. On April 21, 2003, the plaintiff filed a Motion for Recusal with the FERC requesting that Chairman Wood and Commissioner Brownell withdraw from further consideration of the plaintiff's complaint, asserting that the two commissioners had prejudged the matter. *Id.* at 6–7. On April 23, 2003, the FERC issued an Order on Motion for Disclosure and Recusal denying the plaintiff's request for disqualification, but granting the request for disclosure of the transcript of the press conference and a summary of the telephonic conference, as there was no transcript of the telephone conference made by the FERC. *Id.* at 7; *see* Pl.'s Mot., Exhibit ("Ex.") 9. The plaintiff subsequently filed a petition with the FERC for a rehearing, a motion requesting that the FERC stay action in the underlying proceeding until this Court could consider the alleged Sunshine Act

violation, and a request for the FERC to act on an expedited basis to prevent future taint and preserve potential documents. Pl.'s Mem. at 7. All of these motions are apparently still pending before the FERC. *Id.*

On June 18, 2003, the plaintiff became aware that the FERC would address the energy contract abrogation cases at its meeting that was scheduled for June 25, 2003, *id.*, at which time the FERC was also expected to issue its final ruling on the plaintiff's complaint. The plaintiff has now filed an action in this Court, wherein it is seeking, among other things, to have this Court enjoin Chairman Wood and Commissioner Brownell from further participation in its case that is pending before the FERC.

## II. *Standard of Review*

 It is well understood that in considering the plaintiff's motion for a preliminary injunction, this Court must weigh the following four factors: "(1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest." *Al–Fayed v. CIA,* 254 F.3d 300, 303 (D.C.Cir.2001); *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C.Cir.1998); *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995). The Court must balance the moving party's claims against the position of the non-movant in each of these four areas and may issue an injunction if one factor is particularly strong, even though the remaining criteria are weak. *CityFed,* 58 F.3d at 747 (holding that an injunction may be proper "where there is a particularly strong likelihood of success on the merits even if there is a relatively

slight showing of irreparable injury."); *Health Ins. Assoc. of Am. v. Novelli,* 211 F.Supp.2d 23, 28 (D.D.C.2002) (Walton, J.).

■ However, despite this balancing approach, the District of Columbia Circuit has made it clear that "some injury" must be shown by the moving party. *CityFed,* 58 F.3d at 747 (citing *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1210–11 (D.C.Cir.1989) (affirming district court's denial of preliminary injunction where moving party may have been "likely to succeed" but failed to show irreparable harm)). Thus, the failure to make a showing of irreparable harm is alone sufficient reason to deny a motion for a preliminary injunction, *id.,* as "[t]he basis of injunctive relief in the federal courts has always been irreparable harm[,]" *id.* (quoting *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (quoting *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959))).

### III. *Legal Analysis*

**(A) *Can this Court Disqualify Chairman Wood and Commissioner Brownell from Considering the Plaintiff's FERC Complaint?***

As this Court discussed above, the plaintiff's claims before the FERC arise under 16 U.S.C. § 824e. Section 8251(b) of Title 16 provides that "[a]ny party to a proceeding under this chapter[, *i.e.,* Federal Regulation and Development of Power,] *aggrieved by an order issued by the Commission* [,*i.e.,* the FERC,] in such proceeding may obtain a review of such order in the United States Court of Appeals for any circuit ... or in the United States Court of Appeals for the District of Columbia ..." 16 U.S.C. § 8251(b) (emphasis added). As indicated above, the essence of the relief the plaintiff is seeking from this Court is the review of the FERC's April 23, 2003 Order denying the

plaintiff's request that Chairman Wood and Commissioner Brownell recuse themselves from further consideration of the plaintiff's case. The plaintiff's recusal motion that was filed before the FERC was predicated on alleged violations by the two commissioners of 5 U.S.C. § 557(d) and FERC's own regulations, 18 C.F.R. § 385.2201, which prohibits *ex parte* communications in any on-the-record proceeding between a person outside of the FERC and a decisional employee of the FERC, and the "prejudgment" of the plaintiff's FERC complaint. *See* Pl.'s Mot., Ex. 9 (FERC Order denying plaintiff's recusal request "alleging both *ex parte* and prejudgment violations."); Pl.'s Mem. at 6 ("Snohomish [County, Washington] on April 21, 2003 filed a Motion for Recusal requesting that Chairman Wood and Commissioner Brownell withdraw from further consideration of its Complaint proceeding because of the illegal communications that occurred during the Secret Teleconference, especially in light of what one news outlet reported was Commissioner Brownell's 'point-blank' revelation that she and Chairman Wood had prejudged a still pending matter.").

■ In *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958), the Supreme Court stated that:

[t]his statute [16 U.S.C. § 8251] is written in simple words of plain meaning and leaves no room to doubt the congressional purpose and intent. It can hardly be doubted that Congress, acting within its constitutional powers, may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had. So acting, Congress in [16 U.S.C. § 8251] prescribed the specific,

complete and exclusive mode for judicial review of the Commission's orders. *Id.* at 335–36, 78 S.Ct. 1209 (citations omitted). While the plaintiff asserts that this Court can provide the relief of recusal under the authority of the Sunshine Act, the Court cannot agree. The Supreme Court's opinion in *City of Tacoma* made clear that "judicial review of the Commission's *order*, [and] all objections to the order ... must be made in the Court of Appeals or not at all. For Congress, acting within its powers, has declared that the Court of Appeals shall have 'exclusive jurisdiction' to review such orders ..." *Id.* at 336, 78 S.Ct. 1209 (emphasis added). Thus, while the plaintiff seeks to have this Court review the FERC's order denying recusal, the plaintiff is unable to use the jurisdiction granted to this Court pursuant to the Sunshine Act as the predicate for this Court to exercise jurisdiction in an area where Congress has vested exclusive jurisdiction in the Court of Appeals. *See, e.g., Indiana & Michigan Elec. Co. v. Fed. Power Comm'n,* 224 F.Supp. 166 (N.D.Ind. 1963) (holding that where the Commission had denied a request for subpoenas, the remedy was not to seek a writ of mandamus from the district court, but to seek such relief in the Courts of Appeals at the appropriate time). Therefore, this Court concludes that it is without jurisdictional authority to afford the plaintiff the remedy it is principally seeking, *i.e.,* the disqualification of Chairman Wood and Commissioner Brownell.

**(B)** *If there is a Violation of the Sunshine Act, what is the Remedy?*

■ Although the Court concludes that it lacks jurisdiction to review the FERC's April 23, 2003 Order denying the disqualification requests of the two commissioners pursuant to 5 U.S.C. § 557(d), 18 C.F.R. § 385.2201, and "prejudgment violations;" the Court does have the jurisdiction to consider the FERC's alleged violations of the Sunshine Act. *See* 5 U.S.C. § 552b(a)(1) ("[f]or purposes of this section—(1) the term 'agency' means any agency ... headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate, and any subdivision thereof authorized to act on behalf of the agency."); 42 U.S.C. § 7171(b) ("The Commission shall be composed of five members appointed by the President, by and with the advice and consent of the Senate."). This is because Congress has vested federal district courts with jurisdiction to consider Sunshine Act violations. *See* 5 U.S.C. § 552b(h)(1) ("[t]he district courts of the United States shall have jurisdiction to enforce the requirements of subsections (b) through (f) of this section by declaratory judgment, injunctive relief, or other relief as may be appropriate."); *see also Clark–Cowlitz Joint Operating Agency v. FERC,* 798 F.2d 499 (D.C.Cir.1986) (affirming district court's grant of summary judgment to FERC for alleged Sunshine Act violation).

Turning to the applicability of the Sunshine Act and what occurred in this case, 5 U.S.C. § 552b(b) states that "[m]embers shall not jointly conduct or dispose of agency business other than in accordance with this section. Except as provided in subsection (c), every portion of every meeting of an agency shall be open to public observation." The Sunshine Act defines a "meeting" as "the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business ..." 5 U.S.C. § 552b(a)(2). In *FCC v. ITT World Communications, Inc.,* 466 U.S. 463, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984),

the Supreme Court further elaborated on the Sunshine Act's definition of the term "meeting," stating that "[t]his statutory language contemplates discussions that effectively predetermine official actions. Such discussions must be sufficiently focused on discrete proposals or issues as to cause or likely to cause the individual participating members to form reasonably firm positions regarding matters pending or likely to arise before the agency." *Id.* at 471, 104 S.Ct. 1936 (citations and quotation marks omitted). The FERC takes the position, *inter alia*,[1] that what took place here did not amount to a meeting because the discussions that occurred during the telephone conference were nothing more than reiterations of the commissioners' publicly expressed comments at the earlier public meeting. *See* Def.'s Mem. at 15–20 ("Review of Plaintiff's alleged secret and tainted statements shows that they were discussed at [the] FERC March 26 open meeting.").

■ However, the Court is unable to determine what actually occurred during the private telephone conference because there is apparently no transcription or recording of the conference for the Court to review. Such a determination has been aided in other cases through an *in camera* review of a transcription of the discussions. *See, e.g., Natural Res. Def. Council v. Nuclear Regulatory Comm'n,* 216 F.3d 1180, 1188 (D.C.Cir.2000); *Clark–Cowlitz,* 798 F.2d at 501; *Common Cause v. Nuclear Regulatory Comm'n,* 674 F.2d 921, 938–39 (D.C.Cir.1982). The FERC has pro-

duced a "Revised Summary of Events" that was prepared by FERC's Director of External Affairs, that purports to reflect what occurred during the telephone conference. However, on the other hand, the plaintiff has provided several published news reports that conflict with FERC's account of the telephone conference and support the plaintiff's proposition that Chairman Wood and Commissioner Brownell had prejudged the plaintiff's complaint.[2] Accordingly, not only is the Court unable to assess whether the discussions during this telephone conference were "sufficiently focused on discrete proposals or issues as to cause or likely to cause the individual participating members to form reasonably firm positions regarding matters pending or likely to arise before the agency[,]" *ITT,* 466 U.S. at 471, 104 S.Ct. 1936, and therefore amounted to a violation of the Sunshine Act, but even should the Court find such a violation, it would be difficult to provide the plaintiff an adequate remedy. This is because in *Pan American World Airways, Inc. v. Civil Aeronautics Board,* 684 F.2d 31 (D.C.Cir. 1982), the District of Columbia Circuit stated that the failure to comply with the Sunshine Act "provides no basis . . . to set aside the agency's action. Section 552b(h)(2), while it does not forbid [a court] to vacate the [agency's] order, strongly indicates a congressional policy that release of transcripts, not invalidation of the agency's substantive action, shall be the normal remedy for Sunshine Act violations."[3] *Id.* at 36 (citations omitted).

---

1. In addition, the FERC also asserts that the private telephone conference was not a "meeting" under the Sunshine Act. This is because, while two of the three current FERC members participated, this did not constitute a quorum for the transaction of business which can only occur when there are at least three members present. *See* Def.'s Mem. at 9–13.

2. Specifically, the plaintiff cites a published account of the telephone conference in which an anonymous financial analyst stated that Commissioner Brownell conveyed during the private telephone conference that both she and Chairman Wood were going to vote to maintain the long-term energy contracts. *See* Pl.'s Mem. at 12–13.

The state of the record does not afford this Court with the luxury of knowing what actually transpired during the telephone conference at issue. Congress has provided this Court with the authority "to enforce the requirements of [the Sunshine Act] by ... other relief as may be appropriate." 5 U.S.C. § 552b(h)(1). And therefore, while the Court could issue an order pursuant to section 552b(h)(1) granting the plaintiff's request for limited discovery designed to either determine whether the suggestion that one of the participants in this telephone conference may have an audio recording of the conference is accurate or, in the absence of such a recording, to attempt to reconstruct what occurred during the telephone conference,[4] such an order would implicate grave concerns.

**3.** The Court notes that the *Pan Am* Court cited to a House conference report that provides some guidance regarding when a court should depart from the norm and invalidate agency action because of a Sunshine Act violation. 684 F.2d at 36. The conference report provides that:

> [t]he conferees do not intend the authority granted to the Federal courts by the first sentence of subsection (h)(2) to be employed to set aside agency action taken other than under subsection 552b solely because of a violation of section 552b in any case where the violation is unintentional and not prejudicial to the rights of any person participating in the review proceeding. Agency action should not be set aside for a violation of section 552b unless that violation is of a serious nature.

*Id.* (quoting H.R.Rep. No. 1441, 94th Cong., 2d Sess. 23 (1976)).

**4.** The Court finds two cases noteworthy on this point: *Gulf Oil Corporation v. United States Department of Energy*, 663 F.2d 296 (D.C.Cir.1981), and *In re Checkosky*, 142 F.R.D. 4 (D.D.C.1992). In *Gulf Oil*, the plaintiffs had requested during the pendency of a Department of Energy administrative proceeding before an ALJ that the district court enjoin the administrative proceedings, disqualify the ALJ from further participation in the proceedings and permit them to conduct document and deposition discovery on the plaintiffs' claims that the ALJ had engaged in improper ex parte communications with an interested party and the alleged destruction of documents by the agency. In the unique circumstances of *Gulf Oil*, the district court noted that there were "[s]erious issues of fairness and due process [] involved ..." and concluded "that it ha[d] a duty to assure at the very least that plaintiffs [would] not wholly [be] denied an opportunity to develop facts supporting their claims." *Id.* at 305 (citation omitted). In permitting deposition discovery, the district court was concerned about the destruction of evidence and predicated its discovery ruling on the fact that the "plaintiffs [would] have no opportunity to test the issue of recusal or the proper scope of discovery until final consideration of the entire record on administrative appeal to (FERC) at the conclusion of all of the proceedings [which it] estimated [would take] five years." *Id.* (internal quotation and citation omitted). In vacating the district court's discovery order, the Circuit Court concluded that the district court was "justified ... in intervening to assure that a full factual record of any misconduct would be preserved for use by the agency itself in the ongoing proceedings as well as for any later judicial review of that action[,]" but found that because of changed circumstances, the order was no longer appropriate. The unique circumstances of the *Gulf Oil* case as the basis for judicial intervention in ongoing administrative proceedings has been recognized in subsequent cases. For example, in *Checkosky*, 142 F.R.D. 4, two targets of an active Securities and Exchange Commission investigation moved pursuant to several statutes, including the Sunshine Act, for an order from the district court to preserve evidence. Recognizing that it could intervene under the authority of *Gulf Oil*, the *Checkosky* Court declined to do so because of distinguishing circumstances. On this point, the *Checkosky* Court commented that in *Gulf Oil*

> the court found that an anticipated five-year delay in resolving agency proceedings gave substance to plaintiffs' concern about widespread dispersion of agency personnel and the dimming of bureaucratic memories. [However, in *In re Checkosky*], the Commission has represented to the Court both

First, the plaintiff has asserted that should the Court issue an order permitting limited discovery, it should then also stay the FERC proceeding until the discovery is completed. However, the plaintiff has failed to cite to any case authority, and the Court is unaware of any, that authorizes this Court to stay impending agency action based on a suspected Sunshine Act violation.[5] Significantly in this regard, the FERC is slated to issue a final order with respect to the plaintiff's complaint on the same day this Court is being asked to order limited discovery, and it is legally untenable for this Court to have a discovery order in effect while jurisdiction over the FERC's final order rests exclusively in the Circuit Court.[6] Thus, if this Court permitted the plaintiff the limited discovery it seeks to determine whether the two participating commissioners prejudged the case, it would essentially be ordering discovery on an issue that the Courts of Appeals have exclusive jurisdiction to decide. This is because, as the Court discussed above, the Circuit Courts have exclusive jurisdiction over orders issued by the FERC, 16 U.S.C. § 8251, and the FERC has already issued an order denying the plaintiff's motion for recusal by the commissioners, having concluded that they had not prejudged the case before it. Second, with the case in its current posture, the Court finds that it would be improper for it to order discovery to explore the existence of a Sunshine Act violation that directly impacts and is only relevant to the recusal question. Should the Court of Appeals determine that such discovery is appropriate, it clearly has the statutory authority to provide such relief. 16 U.S.C. § 8251, which provides the Circuit Courts with exclusive jurisdiction over orders issued by the Commission under Chapter 12 (Federal Regulation and Development of Power), states that

> [i]f any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper.

The discovery relief should therefore be sought from the Circuit Court.

## IV. *Conclusion*

For the aforementioned reasons, the Court must deny the plaintiff's Motion for a Temporary and Preliminary Injunctive Relief and Expedited Discovery because

---

that pending matters will be decided [by the agency] within the next six months and that steps are being taken to retain all the documents relevant to the petitioners' claims. *Checkosky*, 142 F.R.D. at 8. The circumstances in the instant case are more akin to *In re Checkosky* than *Gulf Oil*. The *Gulf Oil* judicial intervention authorization language was predicated on the concern that during the five-year period when the ALJ would be conducting evidentiary hearings, the full factual record might not be preserved for meaningful judicial review. In the instant case, judicial review by the Circuit Courts can be requested immediately, as final action was taken by the

FERC on June 25, 2003. *See* Peter Behr, *Suppliers Do and Don't Owe for Power Crisis: FERC Upholds West Coast Contracts but Rules 'Unjust' Profits Must Be Returned*, Washington Post, June 26, 2003, at E04.

5. The Court finds it noteworthy that Congress has provided a specific mechanism for the Circuit Courts to stay a Commission's order. *See* 16 U.S.C. § 8251(c). Notably, district courts are not provided this same mechanism.

6. As already noted, final action in the plaintiff's case was taken by the FERC on June 25, 2003. *See supra* note 4.

the plaintiff is unable to demonstrate a substantial likelihood of success on the merits and that it will suffer irreparable harm if an injunction is not granted. This result is called for because this Court is without jurisdiction pursuant to 16 U.S.C. § 8251(b) to review the order issued by FERC denying the plaintiff's request that Chairman Wood and Commissioner Brownell recuse themselves. In addition, due to the circumstance under which this matter is currently before the Court, it is the Court's conclusion that it would not be appropriate for it to provide any relief to the plaintiff for the alleged Sunshine Act violation because doing so would entail ordering discovery regarding the recusal issue, which again falls within the exclusive jurisdiction of the United States Courts of Appeals.[7]

7. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.