Mr. & Mrs. S. v. Timberlane School    CV-03-260-JD  03/15/04
P

UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


<u>Mr. and Mrs. S.</u>

      v.                              Civil No. 03-260-JD
                                      Opinion No. 2004 DNH 046
<u>Timberlane Regional</u>
<u>School District</u>


                           <u>O R D E R</u>


     Mr. and Mrs. S. seek attorneys' fees under the
Individuals with Disabilities Education Act ("IDEA"), 20
U.S.C. § 1415(i)(3)(B), asserting that they were the
prevailing parties in the administrative due process
proceeding brought by the Timberlane Regional School District
("District").  In support of their claim, Mr. and Mrs. S. have
provided the declarations of their counsel, along with copies
of their billing records.  The District objects to an award of
fees, contending that Mr. and Mrs. S. were not prevailing
parties and, alternatively, that the court should exercise its
discretion not to award fees in this case.


                         <u>Background</u>

     Mr. and Mrs. S. are the parents of Johnathan S., who was
born in September of 1996 and was diagnosed in July of 1999
with autism spectrum disorder.  In addition to autism,

Johnathan has other medical conditions, including a suspected mitochondrial disorder that affects his energy and motor performance. Johnathan's parents have sought opinions from several experts, including pediatric neurologists, Dr. Margaret Bauman and Dr. Mark Korson of the New England Medical Center's Floating Hospital for Children in Boston.[1]

Johnathan attended a preschool program at the Timberlane Learning Center ("TLC") during the school years 1999-2000 and 2000-2001. Mr. and Mrs. S., along with some of Johnathan's providers, noted that he regressed after being sick with common childhood illnesses, particularly during the 2000-2001 school year. Johnathan has been non-verbal and uses a communicative device known as a Dynamyte.

In the fall of 2001, Johnathan began kindergarten at the TLC. Mr. and Mrs. S. notified the District about Johnathan's health needs, and at a team meeting in September, Mrs. S. told the participants that Johnathan might have some type of mitochondria disorder. She also raised the possibility that Johnathan might have to stay at home during the winter months. Mr. and Mrs. S. provided the District with a letter from Dr. Korson in November of 2001 who noted that Johnathan had suffered from a number of infections during the winter of

[1]The Hearing Officer also spells Dr. Bauman's name as "Bowman."

2000-2001 and recommended that Johnathan be provided a home-based program during the winter months to avoid exposure during the cold and flu season. In December of 2001, Dr. Bauman concurred with Dr. Korson's recommendation.

At a team meeting on December 17, 2001, the issue of home-based services arose. The school nurse, Judy Morse, R.N., asked for permission to speak with Dr. Korson. Mrs. S. signed a medical release form but then rescinded her permission the next day because she considered the release to be too broad and because she wanted to be included in communications between Dr. Korson and school personnel. Mr. and Mrs. S. removed Johnathan from school on December 17, 2001. Thereafter, he continued to receive some services at the school while the remainder of the program was provided at home.

Mrs. S. continued to meet with the team during the winter. The District required medical information about Johnathan to evaluate his need to receive services at home. Mrs. S. agreed to provide the team with copies of letters from Dr. Korson. The issue of medical information arose at a March meeting but was not resolved at that time. Johnathan returned to school on May 2, 2002.

In early July of 2002, the District proposed that a medical evaluation of Johnathan be conducted by Dr. Ellen Arch

3

of Massachusetts General Hospital, who had been retained by the District. Mrs. S. did not agree to the outside evaluation by Dr. Arch. When the District renewed its request for an outside evaluation in September, Mrs. S. again suggested that the team contact Dr. Korson. During these discussions the parents were willing to permit the District to communicate with Dr. Korson but they wanted to be present or to have prior access to written questions. The District insisted on being able to communicate with Dr. Korson without the parents' participation or control. The District's Director of Pupil Services recommended that the District record all communication with Dr. Korson, as had been done in another case, but that option was not pursued.

In October of 2002, Mrs. S. notified the District that she and her husband would agree to an evaluation by Dr. Arch as long as Mrs. S. was present during all communications with Dr. Arch or that copies of all communications be provided to the parents. The District took Mrs. S.'s conditions on the evaluation by Dr. Arch as a refusal of consent and notified Mrs. S. that it would file for a due process hearing.

The development of Johnathan's Individual Education Plan ("IEP") for 2002-2003 began in July of 2002. Mr. and Mrs. S. expressed concern about the level of training for Johnathan's aide, the use of the Dynamyte device, and techniques for motor

4

planning.  At the September meeting, a team member indicated that Johnathan would begin receiving services at the recommended enhanced levels despite the lack of agreement on the IEP.  Soon after that meeting, however, Mrs. S. was informed that she would have to sign the IEP, with exceptions if necessary, before the enhanced service hours would begin. In October, Mrs. S. signed the IEP but attached eight pages describing her exceptions to the IEP.  The District treated the exceptions as a rejection of the IEP and decided to request due process on that issue.

The District filed for a due process hearing on October 26, 2002.  The New Hampshire Department of Education docketed the proceeding and appointed Amy B. Davidson, Esquire, as the Hearing Officer.  A prehearing conference was held on November 18, 2002, and the hearing was held on December 16-18, 2003. Hearing Officer Davidson issued her decision on March 14, 2003, in which she identified the following issues to have been presented for decision:

> Whether the District is entitled to have unconditional access to Johnathan's treating physician or, in the alternative, whether it may conduct its own medical evaluation while placing certain limits on parental participation in the evaluation process;

> The appropriateness of the proposed 2002-2003 IEP with respect to the following specific areas: a) present levels of performance, annual goals and short-term objectives; b) statements(s) regarding

5

services and classroom modifications; and c)
statement(s) regarding staff support and training;

Whether Johnathan was entitled to the provision
of enhanced hours of related services and, if so,
whether there should be an award of compensatory
education and/or reimbursement to Parents for
private provider expenses;

Procedural violations alleged by the Parents
regarding the District's premature due process
request; failure to consider existing data prior to
requesting outside evaluations; and failure to
provide the Parents with sufficient information with
which they could consent to disclosure of medical
information or to an outside evaluation.

Ad. Rec. at 2659-60.

Davidson found that the District had not violated the
IDEA procedures summarized in the fourth issue, as Mr. and
Mrs. S. had charged. As to the first issue, addressing the
District's access to Johnathan's physicians, Davidson ruled
that the District could choose among three alternatives, two
of which provided for Mr. and Mrs. S.'s participation in the
District's communication with the physicians, and the third
requiring the District to record its meeting with Johnathan's
physician and provide the recording to Mr. and Mrs. S.
Davidson ruled that the IEP team could request a further
medical evaluation only after considering the information
gathered from communications with Johnathan's physicians and
specifically finding that a further evaluation was necessary.
In discussing this issue, Davidson noted: "It is of some

6

concern that, what began as a legitimate quest on the District's part for substantiation of medical information shared by the Parent and gleaned from three (3) pieces of correspondence prepared by Dr. Korson, escalated into a struggle for control over the parameters of informational transmittal." Ad. Rec. at 2668.

In resolving the second issue which addressed the 2002-2003 IEP, Davidson ordered that the IEP be amended to add some, but not all, of the changes requested by Mr. and Mrs. S. As to the third issue, Davidson concluded that District should have provided services to Johnathan at the enhanced levels that Mr. and Mrs. S. and the team agreed were appropriate at the October 2002 meeting, despite their dispute over other aspects of the IEP. Davidson ruled that Johnathan was entitled to compensatory educational services to make up the hours missed since the October 2002 meeting.[2]

---

[2]The District argues that the third issue designated by the Hearing Officer resulted in an improper remedy and was not a claim at all. To the extent the District challenges the Hearing Officer's designation and resolution of this issue, the court does not consider that argument because the District did not appeal the Hearing Officer's decision.

<u>Discussion</u>

"In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." § 1415(i)(3)(B). The court first must determine whether Mr. and Mrs. S. are prevailing parties, and if so, whether any exceptions apply and whether the fees they request are reasonable.

A.  <u>Prevailing Party</u>

"[A] prevailing party is any party who 'succeed[s] on any significant issue which achieves some of the benefits . . . sought,'" and that success "materially alter[s] the litigants' legal relationship by modifying one party's behavior in a way that directly benefits the other." <u>Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.</u>, 321 F.3d 9, 14 (1st Cir. 2003) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)).  A technical or de minimis victory is an insufficient basis for awarding fees; instead the outcome must accomplish something substantive for the successful party. <u>Id.</u> 15-17.  When the school district, rather than the parents, initiates a proceeding, the parents nevertheless may be entitled to fees if they qualify as prevailing parties. <u>Id.</u> at 16.

Mr. and Mrs. S. contend that they are prevailing parties,

8

arguing that they achieved "overwhelming success" in the administrative proceeding. The District argues that Mr. and Mrs. S. are not prevailing parties because the Hearing Officer found that it did not violate IDEA procedural requirements and that Johnathan's IEP was reasonably calculated to enable him to benefit from his education and that he has benefited. The District contends that the Hearing Officer found that an independent medical evaluation was not necessary only because the decision provided access to information that was not previously available, ordered only non-substantive changes in the IEP, and that the award of compensatory education was necessary only because the parents refused to sign the IEP without exceptions.

The District is correct that Hearing Officer Davidson found in its favor on the issue of procedural violations. With respect to the medical information and evaluation, however, Davidson concluded that both sides had been intransigent in their fight to control the process. While Davidson did not require Mr. and Mrs. S. to accede immediately to an evaluation of Johnathan by the District's medical consultant, that result was reached only because sufficient information was expected to be available from Johnathan's treating physicians through the means specified in the decision. Davidson implied that the information from Dr.

Korson could and should have been provided previously. Therefore, on the first issue, neither the parents nor the District entirely prevailed.

As to the issue of Johnathan's IEP, Davidson ordered some of the changes Mr. and Mrs. S. sought, which required the District to modify Johnathan's IEP. In contrast to the current District's characterization, the changes ordered in the IEP are sufficiently "substantive" that the District previously refused Mr. and Mrs. S.'s requests to make those changes. Mr. and Mrs. S. were successful on the third issue since Davidson ordered the District to provide compensatory services to Johnathan for the time he missed when the District refused to provide enhanced services after October 8, 2002. Therefore, although Mr. and Mrs. S. achieved something less than "overwhelming success," they are prevailing parties for purposes of § 1415(i)(3)(B) on at least some of the issues decided in the due process proceeding.

B. <u>Exceptions</u>

The authorization for attorneys' fees is modified by other provisions, including a limit on the award based on a settlement offer, § 1415(i)(3)(D)(i), and a reduction in the award if the parents unnecessarily delayed the resolution of the proceedings, § 1415(i)(3)(F). <u>Doe v. Boston Pub. Schs.</u>,

10

358 F.3d 20, 23 (1st Cir. 2004). The District argues both that it offered to settle and that the parents unnecessarily protracted the proceedings.

In the case of a settlement offer:

Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if--

(I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

(II) the offer is not accepted within 10 days; and

(III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

§ 1415(i)(3)(D)(i). Nevertheless, attorneys' fees may be awarded if the parents were substantially justified in rejecting the settlement offer. § 1415(i)(3)(E).

In this case, Mr. and Mrs. S. offered to settle the question of attorneys' fees before they brought suit to recover their fees, demanding $18,000 of the $19,216.85 in fees incurred at that time. The District responded that it disputed the parents' status as prevailing parties and offered $3,500 to settle the parents' claim for fees. Mr. and Mrs. S. rejected the offer.

The District's offer of settlement would bar Mr. and Mrs.

11

S.'s claim for fees incurred after the offer only if the court finds that the parents are not entitled to fees in excess of the amount offered and that they were not substantially justified in rejecting the offer. As is discussed above, contrary to the District's position, the court has determined that Mr. and Mrs. S. were prevailing parties for purposes of § 1415(i)(3)(D). Given that determination, the parents were substantially justified in rejecting an offer that was only one third of the fees and costs they had incurred at that time.

The District also contends that any award of fees should be reduced because Mr. and Mrs. S. unreasonably protracted the dispute. "[W]henever the court finds that--(i) the parent, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy; . . . the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section." § 1415(i)(3)(F). However, "[t]he provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the [District] unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." § 1415(i)(3)(G).

Based on the Hearing Officer's decision, it appears that both sides contributed to the stalemate that led to the due

12

process hearing.  Mr. and Mrs. S. refused to provide appropriate medical authorizations and may have been overly critical of the IEP.  The District failed to pursue reasonable alternatives for obtaining medical information and unilaterally and mistakenly construed Mrs. S.'s exceptions to the IEP as a rejection.  Therefore, no reduction under § 1415(i)(3)(F) is appropriate.

C.  <u>Reasonable Fees and Costs</u>

1.  <u>Attorneys' fees.</u>

Reasonable attorneys' fees are determined for purposes of the IDEA, as in other cases, by beginning with the lodestar calculation and then applying other considerations to assess the reasonableness of the fees demanded.  <u>See, e.g.</u>, <u>I.B. v. N.Y. City Dep't of Educ.</u>, 336 F.3d 79, 80-81 (2d Cir. 2003); <u>Mr. R. v. Me. Sch. Admin. Dist. No. 35</u>, 295 F. Supp. 2d 120, 121 (D. Me. 2003); <u>Brillon v. Klein Indep. Sch. Dist.</u>, 274 F. Supp. 2d 864, 867-68 (S.D. Tex. 2003).  The lodestar is calculated by multiplying the number of hours reasonably spent on the proceedings by a reasonable hourly rate.  <u>Hensley</u>, 461 U.S. at 433; <u>Gay Officers Action League v. Puerto Rico</u>, 247 F.3d 288, 295-96 (1st Cir. 2001).  Once the lodestar amount is calculated, the court must consider the award in light of the results obtained in the litigation.  <u>Tex. State Teachers Ass'n</u>

13

v. Garland Indep. Sch. Dist., 489 U.S. 782, 789-90 (1989); Hensley, 461 U.S. at 434; Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 858-59 (1st Cir. 1998).

In this case, Mr. and Mrs. S. were primarily represented by Richard O'Meara, a partner at the Portland, Maine, firm of Murray Plumb & Murray, along with other attorneys and staff in that firm. Gregory Swope, of Swope & Nicolosi, P.L.L.C., in Concord, New Hampshire, has represented Mr. and Mrs. S. as local counsel in the proceedings in this court. Both O'Meara and Swope have provided declarations with contemporaneous billing records to support the attorneys' fees and costs requested by Mr. and Mrs. S. They have also provided the declaration of Emily Gray Rice, Esquire, of Orr & Reno in Concord, New Hampshire, to address the reasonableness of the hourly rate charged by O'Meara.

Murray Plumb & Murray charged $185 per hour for O'Meara's services from October of 2002 until January of 2004, when the rate increased to $200 per hour. Two associates in the Murray Plumb & Murray firm worked on the case. The firm charged $145 per hour for Amy Snierson's time until January of 2004 when her rate was increased to $150 per hour and charged $150 per hour for Barbara Goodwin's time. The firm charged $70 per hour for the time spent on the case by a legal assistant, Maria Bowden. Gregory Swope has charged $150 per hour for his

14

time.

Murray Plumb & Murray has submitted bills for 182.1 hours and $27,468.00 in attorneys' fees.[3]  Swope has submitted bills for 3.9 hours for a total of $585 in attorneys' fees.

The District has not objected to or challenged any of the amounts requested.  Instead, in the event the court were to find that Mr. and Mrs. S. were prevailing parties, the District asks the court to exercise its discretion not to award fees at all, asserting that the parents' success was minimal.  Given the parents' status as prevailing parties, as is discussed above, the court will award reasonable fees and costs.[4]  Having failed to address the reasonableness of the amounts requested in fees and costs, the District has not provided any assistance to the court in undertaking its analysis.

Based on the declarations submitted by O'Meara and Swope and the declaration submitted by Emily Gray Rice, the hourly rates charged by the attorneys who worked on this case appear to be generally reasonable.  See also Mr. R., 295 F. Supp. 2d

_____

[3]That amount includes fees charged for the time spent by paralegal Maria Bowden.

[4]Mr. and Mrs. S. did not achieve a merely de minimis victory nor is the relief ordered in the decision simply to maintain the status quo.  See Me. Sch. Admin. Unit No. 35, 321 F.3d at 15.

15

at 121-22 (examining fees billed by Murray Plumb & Murray and Richard O'Meara in an IDEA case). In general, the time expended also appears to be reasonable.

Certain activities, however, may not be appropriately reimbursed at an attorney's full hourly rate because those activities, such as time spent traveling, meeting or communicating with co-counsel, and compiling billing records, do not require the "core" skills of an attorney. See, e.g., Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993); Furtado v. Bishop, 635 F.2d 915, 922 (1st Cir. 1980); LaPlante v. Pepe, 2004 WL 371832, at *5 (D. Mass. Jan. 29, 2004); Weinberger v. Great N. Nekoosa Corp., 801 F. Supp. 804, 817-25 (D. Me. 1992). In addition, if a prevailing party was successful on some but not all claims, the court must consider whether the fee award is proportional to the degree of the party's success. Gay Officers, 247 F.3d at 296.

After reviewing the billing records submitted, the court notes several billing amounts that require adjustment. O'Meara charged half of his billing rate for travel to Concord on November 18, 2002, but did not indicate a similar reduction in the hourly rate for time he spent traveling on other days. Therefore, the court will reduce the rate charged for two hours of O'Meara's time on each day from December 16 through December 18, 2002, to $92.50 for travel time, and the amount

16

of attorneys' fees will be reduced by $555 to reflect that change. O'Meara and his associates, Snierson and Goodwin, billed their full rates for time spent on activities that would appear not to require the "core" skills of an attorney such as sending email to each other, indexing exhibits, and reviewing billing records and declarations in support of a fee award. The time spent on these activities, however, is not easily separated from their other activities so that the court will discount the amount billed by 2% to account for those amounts. Both the time and hourly rate charged by Swope, as local counsel, appear to be reasonable.

Although Mr. and Mrs. S. achieved something less than complete success on the issues addressed by the Hearing Officer, they were successful, in part, as to the first two issues, and the third issue was resolved entirely in their favor. See Me. Sch. Admin. Unit No. 35, 321 F.3d at 16. The issues on which they were partially successful are intertwined with the parts in which they were not successful, so that it is not possible or necessary to parse their attorneys' efforts between successful and unsuccessful claims. Cf. Gay Officers, 247 F.3d at 296; Bandera v. City of Quincy, 220 F. Supp. 2d 26, 50-51 (D. Mass 2002). Mr. and Mrs. S.'s degree of success is sufficient to support an award of attorneys' fees as requested, with the adjustments described above, without

17

further reduction.

Therefore, Mr. and Mrs. S. are entitled to attorneys' fees in the amount of $26,948.64.

### 2. Costs and expenses.

Section 1415(i)(3)(B) provides that the court may award "reasonable attorneys' fees as part of the costs to the parents" who are prevailing parties in an IDEA case. The statute does not further define costs. The statutes provides no guidance on what, other than attorneys' fees, should be included as costs.

Other courts have assessed costs in IDEA cases under 28 U.S.C. § 1920, governing the taxation of costs generally in federal litigation.[5] See, e.g., T.D. v. LaGrange Sch. Dist.

_____

[5]§ 1920 provides:
   A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

18

No. 102, 349 F.3d 469, 480 (7th Cir. 2003); <u>Neosho R-V Sch.</u>
<u>Dist. v. Clark</u>, 315 F.3d 1022, 1031 (8th Cir. 2003); <u>P.G. v.</u>
<u>Brick Township Bd. of Educ.</u>, 124 F. Supp. 2d 251, 266 (D.N.J.
2000). However, courts have reached mixed results as to
whether the recovery of costs under § 1415(i)(3)(B) is limited
to those costs provided in § 1920 or whether other expenses
such as postage, travel, telephone, internet research, and
expert witness fees may be recovered.

Some courts have allowed recovery of expenses outside
those listed in § 1920 in IDEA cases while others have found
such expenses to be part of the attorneys' overhead that is
recouped through fees. <u>See, e.g.</u>, <u>id.</u> at 267; <u>B.K. v. Toms</u>
<u>River Bd. of Educ.</u>, 998 F. Supp. 462, 476 (D.N.J. 1998);
<u>Verginia McC. v. Corrigan-Camden Indep. Sch. Dist.</u>, 909 F.
Supp. 1023, 1033 (E.D. Tex. 1995). The Seventh and Eighth
Circuits, the only circuit courts to have considered the

---

        (5) Docket fees under section 1923 of this title;

        (6) Compensation of court appointed experts,
        compensation of interpreters, and salaries, fees,
        expenses, and costs of special interpretation
        services under section 1828 of this title.

        A bill of costs shall be filed in the case and, upon
           allowance, included in the judgment or decree.

19

issue, have ruled that 28 U.S.C. § 1821 limits the recovery of expert witness fees in IDEA cases.[6]  See LaGrange, 349 F.3d at 480-81; Neosho-R-V, 315 F.3d at 1031; but see Brillon, 274 F. Supp. 2d at 871-72 (not following Eighth Circuit, based on intent expressed in legislative history); R.E. v. N.Y.C. Bd. of Educ., 2003 WL 42017, at *3 (S.D.N.Y. Jan. 6, 2003) (expert witness fees available as costs in IDEA cases); Pasik v. Gateway Reg'l Sch. Dist., 130 F. Supp. 2d 217, 220-22 (D. Mass. 2001) (same); Brick Township, 124 F. Supp. at 267 (same).

Cases construing other fee-shifting statutes are persuasive authority for construing § 1415(i)(3)(B).  Me. Sch. Admin. Unit 35, 321 F.3d at 14.  The First Circuit and district courts in this circuit have generally not found expenses outside of § 1920 to be recoverable as costs pursuant to other fee-shifting statutes.  See, e.g., In re San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d 956, 964 (1st Cir. 1993) (interpreting scope of Fed. R. Civ. P. 54(b)); Rodriguez-Garcia v. Davila, 904 F.2d 90, 100 (1st Cir. 1990) (applying § 1920 in civil rights case); Denny v. Westfield State Coll., 880 F.2d 1465, 1470-72 (1st Cir. 1989) (following

---

[6]§ 1821(b) allows $40 per day for each day of a witness's attendance at trial.

Crawford Fitting Co. v. J. Gibbons, Inc., 482 U.S. 437, 440-43 (1987)); Sepulveda v. Matos, 2004 WL 392736, at *4-6 (D.P.R. Feb. 27, 2004); Billings v. Cape Cod Child Dev. Program, 270 F. Supp. 2d 175, 178 (D. Mass. 2003); Shared Med. Sys. v. Ashford Presbyterian Cmty Hosp., 212 F.R.D. 50, 53-56 (D.P.R. 2002). Some district courts in this circuit, however, have decided that certain out-of-pocket expenses, which are not recoverable under § 1920, may be recovered as part of attorneys' fees. See, e.g., Bandera, 220 F. Supp. 2d at 29 n.36; Pasik, 130 F. Supp. 2d at 220-22; Johnson v. State of R.I., Dept. of Corrs., 2000 WL 303305, at *17 (D.R.I. 2000); Data Gen. v. Grumman Sys. Support Corp., 825 F. Supp. 361, 367-68 (D. Mass. 1993); Weinberger, 801 F. Supp. at 827.

As is readily apparent, "[t]he law governing taxation of 'costs' is not entirely coherent." Id. at 366. In addition, it is not entirely clear which party bears the burden in a request for costs. In general, the party seeking to recover costs bears the burden of showing that the amounts sought are necessary and reasonable. See, e.g., Allison v. Bank One-Denver, 289 F.3d 1223, 1248-49 (10th Cir. 2002); Pan Am. Grain Mfg. Co. v. P.R. Ports Auth., 193 F.R.D. 26, 37 (D.P.R. 2000); Weinberger, 801 F. Supp. at 827. However, a presumption exists in favor of awarding costs to a prevailing party,

requiring the non-prevailing party to overcome that presumption to avoid an award.  See, e.g., San Juan Dupont Plaza Hotel Fire, 994 F.3d at 963; Billings, 270 F. Supp. 2d at 177; Neles-Jamesbury, Inc. v. Fisher Controls Int'l, Inc., 140 F. Supp. 2d 104, 105 (D. Mass. 2001).

The District has not objected to any of the costs or expenses requested by Mr. and Mrs. S.  The District's silence both fails to convince the court that an award of costs and expenses is not appropriate here and likely forfeits any opportunity the District might have had to challenge the amount of the award on appeal, see Rodriguez-Garcia, 904 F.2d at 100, n.11.

Murray Plumb & Murray has submitted bills for $2102.16 in costs and expenses, which include amounts for Westlaw research, telephone, travel, and postage, and an expert witness fee of $825.  Although the court might have been inclined to stay within follow the limitations imposed by § 1920, Mr. and Mrs. S. have provided legal support, albeit minimal, for their request to recover those costs except for the Westlaw charge.[7]  The court will allow the costs and

---

[7]Weinberger, 801 F. Supp. at 827, cited by Mr. and Mrs. S. does not allow the recovery of computer assisted research expenses as part of costs.

22

expenses stated in Murray Plumb & Murray's bill of costs except for $72 charged for Westlaw research, for a total of $2048.16. Swope has billed $178.60 in expenses for a filing fee and service fee, both of which are allowed under § 1920.

## Conclusion

For the foregoing reasons, the plaintiff's motion for attorneys' fees and costs (document no. 21) is granted in the following amounts:

Attorneys' fees:  $26,948.64.

Costs and expenses:  $2226.76.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 15, 2004

cc:  Jeanne M. Kincaid, Esquire
     Richard L. O'Meara, Esquire
     Gregory W. Swope, Esquire

23